DOUGLAS *v.* ALABAMA.

No. 313. Argued March 9–10, 1965.—Decided April 5, 1965.

*Charles Cleveland* argued the cause for petitioner. With him on the brief were *Bryan A. Chancey* and *Robert S. Gordon.*

*Paul T. Gish, Jr.,* Assistant Attorney General of Alabama, argued the cause for respondent. With him on the brief was *Richmond M. Flowers,* Attorney General of Alabama.

416

MR. JUSTICE BRENNAN delivered the opinion of the Court.

The petitioner and one Loyd were tried separately in Alabama's Circuit Court on charges of assault with intent to murder. Loyd was tried first and was found guilty. The State then called Loyd as a witness at petitioner's trial. Because Loyd planned to appeal his conviction, his lawyer, who also represented petitioner, advised Loyd to rely on the privilege against self-incrimination and not to answer any questions. When Loyd was sworn, the lawyer objected, on self-incrimination grounds, "to this witness appearing on the stand," but the objection was overruled. Loyd gave his name and address but, invoking the privilege, refused to answer any questions concerning the alleged crime. The trial judge ruled that Loyd could not rely on the privilege because of his conviction, and ordered him to answer, but Loyd persisted in his refusal.[1] The judge thereupon granted the State Solicitor's motion "to declare [Loyd] a hostile witness and give me the privilege of cross-examination." The Solicitor then produced a document said to be a confession signed by Loyd. Under the guise of cross-examination to refresh Loyd's recollection, the Solicitor purported to read from the document, pausing after every few sentences to ask Loyd, in the presence of the jury, "Did you make that statement?" Each time, Loyd asserted the privilege and refused to answer, but the Solicitor continued this form of questioning until the entire docu-

---

[1] Loyd had not been sentenced at the time of petitioner's trial. The trial judge initially threatened to hold Loyd in contempt for persisting in his refusal to answer after the judge had ruled that Loyd could not rely on the privilege since "the jury has already determined your guilt." However, the judge did not proceed with the contempt citation but interrupted petitioner's trial to sentence Loyd to 20 years' imprisonment.

ment had been read.[2]   The Solicitor then called three law enforcement officers who identified the document as embodying a confession made and signed by Loyd. Although marked as an exhibit for identification, the document was not offered in evidence.

This procedure, petitioner argues, violated his rights under the Confrontation Clause of the Sixth Amendment as applied to the States.   The statements from the document as read by the Solicitor recited in considerable detail the circumstances leading to and surrounding the alleged crime; of crucial importance, they named the petitioner as the person who fired the shotgun blast which wounded the victim.[3]   The jury found petitioner guilty.

---

[2] There were 21 questions occupying seven pages in the printed record.

[3] Two of the Solicitor's questions were as follows:

"Did you make the further statement, 'We intended to shoot these trucks before they got to Centreville, but when we turned and went back north and passed the trucks again I was unable to bring myself to the point of shooting the trucks.   After we passed the trucks this time we turned around and went south again toward Centreville, Alabama.   These trucks were both stopped at a truck stop in Centreville where we passed them again and we proceeded on south on No. 5 about twenty miles.   We sat alongside of the highway waiting for the trucks to come on and several trucks passed us, so we thought we ought to move before someone recognized us.   We went back north again and saw a station wagon that looked suspicious so we turned off No. 5 onto 16.   We drove over this route about six or eight miles and pulled in behind a church.   We sat there for about five minutes and then heard what sounded like two trucks together going south on No. 5.   We thought this was the two trucks and we went back to No. 5.   When we got to No. 5 I told Douglas that I would drive and he said that was fine because I knew the car better than he.   I drove on until we caught these trucks about five or eight miles above the junction of No. 5 and No. 80 and we passed them proceeding on to the junction where we turned around and headed back north to meet these trucks.   Jesse Douglas was in the back seat with the automatic shotgun that belongs to B. F. Jackson and had it loaded with buckshot.   He rolled down the window and

The Court of Appeals of Alabama affirmed, 42 Ala. App. 314, 163 So. 2d 477. Although stating that Loyd's alleged confession was inadmissible in evidence against petitioner under state law because "[t]here must be confrontation face to face to allow viva voce cross-examination before the jury," and noting that "it might be claimed that the repeated and cumulative use of the confession might have been an indirect mode of getting the inadmissible confession in evidence," the Court of Appeals affirmed petitioner's conviction on the ground that petitioner's counsel had "stopped objecting" and that in that circumstance, "the failure to object was waiver." 42 Ala. App., at 329, 332, 163 So. 2d, at 493, 495. The Supreme Court of Alabama denied review, 276 Ala. 703, 163 So. 2d 496. We granted certiorari, 379 U. S. 815. We reverse.

## I.

We decide today that the Confrontation Clause of the Sixth Amendment is applicable to the States. *Pointer* v. *Texas, ante,* p. 400. Our cases construing the clause hold that a primary interest secured by it is the right of cross-examination; an adequate opportunity for cross-examination may satisfy the clause even in the absence of physical confrontation. As the Court said in *Mattox* v. *United States,*

"The primary object of the constitutional provision in question was to prevent depositions or *ex parte* affidavits . . . being used against the prisoner

when we passed these trucks he shot the lead truck as we passed them heading back north as they were coming south. We then went on to Highway 14, turned left and went into Greensboro, Alabama. We turned left in Greensboro on No. 69, drove south about five miles and realized we were going the wrong direction to go to Tuscaloosa, Alabama. We turned around and went back up to No. 69 to Tuscaloosa.' Did you make that statement?"

"Were you asked the question, 'How many shots were fired at the truck?' And your answer, 'Only one.' Did you say that?"

in lieu of a personal examination and cross-examination of the witness in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief." 156 U. S. 237, 242–243.

See also 5 Wigmore, Evidence §§ 1365, 1397 (3d ed. 1940); *State* v. *Hester,* 137 S. C. 145, 189, 134 S. E. 885, 900 (1926).

In the circumstances of this case, petitioner's inability to cross-examine Loyd as to the alleged confession plainly denied him the right of cross-examination secured by the Confrontation Clause. Loyd's alleged statement that the petitioner fired the shotgun constituted the only direct evidence that he had done so; coupled with the description of the circumstances surrounding the shooting, this formed a crucial link in the proof both of petitioner's act and of the requisite intent to murder. Although the Solicitor's reading of Loyd's alleged statement, and Loyd's refusals to answer, were not technically testimony, the Solicitor's reading may well have been the equivalent in the jury's mind of testimony that Loyd in fact made the statement; and Loyd's reliance upon the privilege created a situation in which the jury might improperly infer both that the statement had been made and that it was true. *Slochower* v. *Board of Higher Education,* 350 U. S. 551, 557–558; *United States* v. *Maloney,* 262 F. 2d 535, 537 (C. A. 2d Cir. 1959). Since the Solicitor was not a witness, the inference from his reading that Loyd made the statement could not be tested by cross-examination. Similarly, Loyd could not be cross-examined on a statement imputed to but not admitted by him. Nor was the opportunity to cross-examine the law en-

forcement officers adequate to redress this denial of the essential right secured by the Confrontation Clause. Indeed, their testimony enhanced the danger that the jury would treat the Solicitor's questioning of Loyd and Loyd's refusal to answer as proving the truth of Loyd's alleged confession. But since their evidence tended to show only that Loyd made the confession, cross-examination of them as to its genuineness could not substitute for cross-examination of Loyd to test the truth of the statement itself. *Motes* v. *United States,* 178 U. S. 458; cf. *Kirby* v. *United States,* 174 U. S. 47.

Hence, effective confrontation of Loyd was possible only if Loyd affirmed the statement as his. However, Loyd did not do so, but relied on his privilege to refuse to answer. We need not decide whether Loyd properly invoked the privilege in light of his conviction. It is sufficient for the purposes of deciding petitioner's claim under the Confrontation Clause that no suggestion is made that Loyd's refusal to answer was procured by the petitioner, see *Motes* v. *United States, supra,* at 471; on this record it appears that Loyd was acting entirely in his own interests in doing so. This case cannot be characterized as one where the prejudice in the denial of the right of cross-examination constituted a mere minor lapse. The alleged statements clearly bore on a fundamental part of the State's case against petitioner. The circumstances are therefore such that "inferences from a witness' refusal to answer added critical weight to the prosecution's case in a form not subject to cross-examination, and thus unfairly prejudiced the defendant." *Namet* v. *United States,* 373 U. S. 179, 187. See also *Fletcher* v. *United States,* 118 U. S. App. D. C. 137, 332 F. 2d 724 (1964).

## II.

We cannot agree with the Alabama Court of Appeals that petitioner's counsel waived the right to confrontation

through failure to make sufficient objection to the reading of Loyd's alleged confession. The court stated: "There must be a ruling sought and acted on before the trial judge can be put in error. Here there was no ruling asked or invoked as to the questions embracing the alleged confession." 42 Ala. App., at 332, 163 So. 2d, at 495. Yet, as the colloquy set out in the margin shows, petitioner's counsel did object three times to the reading of the confession before the jury.[4] After the second time, the Solic-

---

[4] The following occurred:

"Q. Is that your signature (showing witness signature on confession)?

"A. I'm not sure.

"Q. I will ask you if on January 20, 1962—

"Mr. Esco: (Interrupting) If your Honor please, I object to the reading of any document or purported confession,—

"Mr. McLeod: (Interrupting) This is cross-examination.

"The Court: Hostile witness. Overrule.

"Mr. Esco: We except, if you please.

"Q. I will ask you if on the night of January 20, 1962, in Selma, Alabama, in the Dallas County jail if you didn't make the following statement: (reading) 'I, Olen Ray Loyd, make the—'

"Mr. Esco: (Interrupting) I object to this being read in the presence of the jury.

"Mr. McLeod: You've already got an objection in there.

"Mr. Esco: I object to this being read in the presence of the jury.

"The Court: Overrule.

"Mr. Esco: We except."

After the questions were read, defense counsel renewed his objections:

"Mr. Esco: I'd first like to object to the reading of this purported confession on the grounds that it is hearsay evidence, that it was made outside the hearing of this defendant, it was not subject to cross-examination, and we move to exclude it from the evidence.

"The Court: The Court will deny your motion.

"Mr. Esco: We except, if you please. And at this time, your Honor, we make a motion for a mistrial on the grounds that this jury has been so prejudiced from these proceedings, and from the attempts

itor assured him that he already had an objection in—plainly implying that further objection to the reading of the document was unnecessary. The ground for objection to later questions would have been the same, that the confession was being read to the jury. In light of this record it is difficult to understand the Court of Appeals' conclusion; nevertheless, accepting the finding as an authoritative interpretation of Alabama law, we follow our consistent holdings that the adequacy of state procedural bars to the assertion of federal questions is itself a federal question. See *Wright* v. *Georgia,* 373 U. S. 284, 289–291. In determining the sufficiency of objections we have applied the general principle that an objection which is ample and timely to bring the alleged federal error to the attention of the trial court and enable it to take appropriate corrective action is sufficient to serve legitimate state interests, and therefore sufficient to preserve the claim for review here. *Davis* v. *Wechsler,* 263 U. S. 22, 24; *Love* v. *Griffith,* 266 U. S. 32, 33–34. No legitimate state interest would have been served by requiring repetition of a patently futile objection, already thrice rejected, in a situation in which repeated objection might well affront the court or prejudice the jury beyond repair. Too, after the confession was read, the defense moved to exclude it; it then moved for a mistrial and for a new

---

of the prosecution to use illegal evidence, that no fair and just verdict whatsoever could come from a jury that has been so prejudiced.

"The Court: Motion is denied.

"Mr. Esco: We except, if you please.

    .      .      .      .      .

"Mr. Esco: We would like to make a motion for a new trial on the grounds that the proceedings have been very irregular here today and we feel that it has been prejudicial to this defendant.

"The Court: . . . Your objection is overruled.

"Mr. Esco: It is a motion, your Honor.

"The Court: Your motion is overruled.

"Mr. Esco: We except, if you please."

trial; all three motions were denied. After two of the three law enforcement officers had testified, the defense renewed its objections to the hearsay references in Loyd's alleged confession and again was overruled. On these facts, it is clear that the defense brought the objection to the attention of the court at several points, at any of which corrective action could have been taken by stopping the questioning, excusing the jury, or excluding the evidence. To the extent that the Alabama rule requires objection after each and every question in this prolonged series, it is plainly inadequate to bar our review of the federal question presented.

*Reversed and remanded.*

MR. JUSTICE HARLAN, concurring in the result.

For reasons stated in the opinion of the Court, I agree that petitioner was denied a right of "confrontation" embodied in the concept of ordered liberty. I concur in the judgment of reversal on the premises stated in my opinion concurring in the result in *Pointer* v. *Texas, ante,* p. 408, decided today.

MR. JUSTICE STEWART, concurring in the result.

The Court says that what happened in this case violated the petitioner's "rights under the Confrontation Clause of the Sixth Amendment as applied to the States." I concur in the Court's judgment, because I think the petitioner was deprived of his liberty without due process of law in violation of the Fourteenth Amendment. This difference in view is, of course, far more than a matter of mere semantics. See my opinion concurring in the result in *Pointer* v. *Texas, ante,* p. 409.