THE STATE OF OHIO, APPELLEE, *v.* OLIVER, APPELLANT.

(No. 29926—Decided September 10, 1970.)

*Mr. John T. Corrigan,* prosecuting attorney, and *Mr. Edward J. Sullivan,* for appellee.

*Mrs. Carol G. Emerling* and *Mr. William D. Beyer,* for appellant.

Day, J. The defendant, appellant herein, Ronald Oliver, will be referred to hereinafter as the "defendant," one Robert T. Kelly as "Kelly" or "codefendant" and the state of Ohio as the "State."

I.

Both the defendant and the codefendant were represented at the trial by the same lawyer. Apparently, the defendant raised no objection to dual representation at the time of trial.

Defendant was convicted of the armed robbery of a gasoline station. His codefendant, Kelly, was acquitted.

Defendant, for all practical purposes, confessed to unarmed robbery in open court but contended that the pistol on his person at the time of his arrest at the scene had been placed there with a view to taking it to a potential buyer. According to him it lay in his pocket forgotten while he conducted the robbery. Defendant's testimony as to the role of the gun was seriously contradicted by a gas station attendant but not by his codefendant who testified he saw no gun.

Proof of defendant's participation in the robbery is overwhelming. The stance of the evidence on the use of a gun to commit it is more equivocal but sufficient to support a conviction for armed robbery.

II.

Appellate counsel for the defendant Oliver assigns three errors:

"I. Co-defendant's inculpatory testimony and subsequent acquittal indicate an inherent conflict of defensive theories and trial strategy which resulted in prejudicial joining at trial of defendant and co-defendant, and an inherent conflict of interest.

"II. Co-defendant's testimony and the dual fiduciary relationship of single representation by counsel of both defendants effectively denied to defendant his right to confrontation and cross-examination of witnesses against him and denied to defendant the effective assistance of counsel— all of which are guaranteed by the Sixth Amendment of the United States Constitution as applied to the states by the Fourteenth Amendment, and Article I, Section 10 of the Constitution of Ohio.

"III. Despite the lack of pre-trial motions for severance, the trial court abused its discretion in not granting defendant a new trial when the prejudicial testimony of the co-defendant became apparent."

A careful scrutiny of the record has convinced us that all the claimed errors with a constitutional reference are harmless beyond a reasonable doubt, see *Chapman* v. *California* (1967), 386 U. S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824, and nonconstitutional errors, if any, are not prejudicial. Therefore, we affirm.

Nonetheless, the second assignment of error raises a problem of such gravity that a brief discussion is warranted.

### III.

The potential conflict of interest implicit in dual representation has been noted in a work which is probably the most comprehensive review of the defense function ever undertaken in this country. That study concludes:[1]

---

[1]*Standards Relating to the Prosecution and Defense Function*, at 214. *American Bar Association Project on Standards for Criminal Justice (tentative draft)*, (1970). The tentative standards were formulated over a period of years and only after thorough consultation with numbers of state and federal judges and a large number of the leading practitioners of criminal law from both the prosecution and defense.

"'* * * Although there may be some situations where it will be mutually advantageous to the defendants to have a single lawyer represent them, the risk of an unforeseen and even unforeseeable conflict of interest developing is so great that a lawyer should decline multiple representation unless there is no other way in which adequate representation can be provided to the defendants.'"[2]

In a stout dictum in *Glasser* v. *United States*,[3] the Supreme Court of the United States condemned dual representation for the stress it imposed on counsel's performance. Rejecting the necessity for a finely screened assessment of the effects of double representation, the court said:

" * * * Irrespective of any conflict of interest the additional burden of representing another party may conceivably impair counsel's effectiveness.

"To determine the precise degree of prejudice sustained * * * as a result of the court's appointment of * * * counsel * * * is at once difficult and unnecessary. The right to have the assistance of counsel is *too fundamental* and *absolute* to allow courts to indulge in *nice calculations* as to the amount of prejudice arising from its denial. * * *" (Emphasis supplied.)

The quoted statement is dictum insofar as it seems to say that dual representation represents a *per se* denial of effective counsel. That any such implication is overbroad is apparent from the fact that the verdict against Glasser was set aside while that of his codefendant represented by the same lawyer was affirmed. The court said the codefendant "does not contend that he was prejudiced by the appointment, and we are clear from the record that no prejudice is disclosed as to him." By contrast, an ex-

---

[2] Suppose, *p. e.*, A and B, defendants, are represented by one lawyer. A witness testifies to a matter tending to exonerate A but condemning B. The lawyer will not want to shake the testimony as it relates to A but strong cross-examination on behalf of B may destroy the credibility of the witness. How does their common lawyer resolve the dilemma? If he declines to cross-examine at all, who speaks for B? What then of confrontation?

[3] (1942), 315 U. S. 60, 75-76, 86 L. Ed. 680, 702, 62 S. Ct. 457.

amination *of the record* disclosed that Glasser's representation was "not as effective as it might have been if the appointment had not been made."[4]

From this, we distill the rule that dual representation is not favored and that there need be no meticulous combing of the record to demonstrate prejudice where double representation is the fact. On the contrary, *conceivable* prejudice reflected in the record would suffice for reversal.

Since the right to counsel, to confrontation and to cross-examination are constitutional rights which state due process encompasses, *Gideon* v. *Wainwright* (1963), 372 U. S. 335, 9 L. Ed. 2d 799, 83 S. Ct. 792, 93 A. L. R. 2d 733; *Pointer* v. *Texas* (1965), 380 U. S. 400, 13 L. Ed. 2d 923, 85 S. Ct. 1065; *Douglas* v. *Alabama* (1965), 380 U. S. 415, 13 L. Ed. 2d 934, 85 S. Ct. 1074, their denial activates the rule of *Chapman* v. *California, supra* (*i. e.*, that constitutional error—to be harmless—must be "harmless [error] beyond a reasonable doubt"). The *conceivable* prejudice rule of *Glasser* can be squared with the *Chapman* rule. Both rest upon developments from an analysis of the record.[5] And, in the dual representation situation, "conceivable" prejudice, one may say, is not "harmless beyond a reasonable doubt."

## IV.

Because dual representation is not favored, without implying any impropriety on the part of counsel in this case, it is our view that a constitutionally fair trial usually would be better served by single counsel for a single defendant in this or any other case. However, in the instance before us the record amply supports the conviction without

---

[4] *Glasser* v. *United States*, 315 U. S. at 76. There is a distinction of considerable import between the instant case and *Glasser*. From all that appears from the record here, the double representation was not the result of appointment but was defendant's conscious choice.

[5] Independent evaluation of inferences from the record on review is permissible to determine whether constitutional rights have been denied. See *Culombe* v. *Connecticut* (1961), 367 U. S. 568, 605, 6 L. Ed. 2d 1037, 1059, 81 S. Ct. 1860. Cf. *Fahy* v. *Connecticut* (1963), 375 U. S. 85, 11 L. Ed. 2d 171, 173, 84 S. Ct. 229.

providing even that exiguous foundation sufficient for constitutionally harmful error. For there is no evidence of ineffective counsel or any circumstance limiting confrontation or cross-examination. The judgment is affirmed.

*Judgment affirmed.*

WASSERMAN, J., concurs.

WHITE, C. J., participated in this case and approved the opinion and syllabus. Judge White died before the decision date.