Donald A. RADO

v.

John R. MANSON, Commissioner
of Correction.

Civ. No. H–77–125.

United States District Court,
D. Connecticut.

Aug. 16, 1977.

David S. Golub, Stamford, Conn., for
plaintiff.

Robert E. Beach, Jr., Asst. State's Atty.,
New Haven, Conn., John F. Mulcahy, Jr.,
Asst. Chief State's Atty., Woodbridge,
Conn., for defendant.

RULING ON MOTION FOR BOND

BLUMENFELD, District Judge.

Donald A. Rado has filed a petition for a
writ of habeas corpus seeking collateral re-

350

view in this court of his 1972 state conviction for robbery in the first degree, burglary in the first degree and conspiracy; this conviction has been affirmed by the state Supreme Court, *State v. Rado,* 372 A.2d 159 (1976). During the four-year pendency of his state appeal, petitioner was free on a $75,000 property bond. His present application for bail seeks release on similar terms pending resolution of his habeas petition.

■ A federal court has the inherent power to release a state prisoner on bail pending a determination of the merits of a petition for a writ of habeas corpus. *Glynn v. Donnelly,* 470 F.2d 95 (1st Cir. 1972); *Woodcock v. Donnelly,* 470 F.2d 93 (1st Cir. 1972); *Morgan v. Manson,* 411 F.Supp. 11 (D.Conn.1976); *cf. Argro v. United States,* 505 F.2d 1374, 1377 (2d Cir. 1974). However, considerations of comity and principles of federalism demand that this power be exercised sparingly.

■ Two factors must be considered in assessing the propriety of granting bail in these circumstances. First, the petitioner must be found to be an exceptionally strong candidate for bail, that is, the risk of flight must be *de minimis.* Second, because "[t]he presumption [of innocence] fades upon conviction, and can be of no significance after the defendant's appeal has been rejected," *Glynn v. Donnelly, supra,* 470 F.2d at 98, the petitioner must raise "substantial constitutional claims upon which he has a high probability of success . . . ." *Calley v. Callaway,* 496 F.2d 701, 702 (5th Cir. 1974). Put another way, the petitioner must present both "a clear case on the law" and "a clear, and readily evident, case on the facts." *Glynn v. Donnelly, supra,* 470 F.2d at 98.

By traditional standards, petitioner Rado is an exceptionally strong candidate for bail. Cf. 18 U.S.C. § 3146(b). The uncontested affidavits before the court reveal that he and his wife of 13 years have lived in the Waterbury, Connecticut area all of their lives, and have three children, aged 12, 10 and 9. Rado, who is 46 years old, has never previously been incarcerated, and has no prior felony convictions. Moreover, at the time of his incarceration in March 1977, following the affirmance of his conviction, he had been employed for three years as Regional Manager (for the Waterbury area) of Royal Tuxedoland, Ltd., a clothing store chain; that job is currently being held open for him, and if he is released, he will be able to resume his employment and the support of his family. Thus, while the crimes for which he has been convicted are of a serious nature, petitioner's family and community ties, employment history, and the absence of a serious prior criminal record all suggest that the likelihood that he would flee the jurisdiction pending the outcome of this action is minimal. Indeed, aside from the context in which the application is sought, this is a classic case for the granting of bail.

On the merits, petitioner's claims of constitutional error relate to the testimony at his trial of Fred Hall, an alleged accomplice, who had pleaded guilty to a conspiracy count arising out of the robbery and who was awaiting sentencing at the time of trial. During his testimony, Hall repeatedly sought to invoke the fifth amendment privilege against self-incrimination when questioned about his involvement and the petitioner's involvement in the offense charged. Despite the fact that he had not yet been sentenced and that two charges against him had only been *nolled,* the trial court overruled Hall's claim of privilege and ordered him to answer the prosecutor's questions. When he continued to resist surrender of the privilege, the trial court (in the presence of the jury) declared Hall a hostile witness and subsequently (after excusing the jury) held him in contempt. Nonetheless, Hall persisted in his refusal to testify about the robbery and did not directly incriminate Rado.

Under the guise of "refreshing" Hall's recollection, the prosecutor confronted him with a portion of the transcript of his plea proceedings. In the presence of the jury, the state's attorney read aloud the factual recitation of the offense stated by the prosecutor at that plea proceeding—a statement which Hall had acknowledged at that time to be substantially accurate. However,

while Hall admitted at trial that he recalled these prior statements which also incriminated Rado, he refused to testify as to whether or not they were true. The thrust of petitioner's constitutional claim is that the admission of these hearsay statements which could not be the subject of cross-examination violated his rights under the Confrontation Clause of the sixth and fourteenth amendments. Moreover, he claims that this error was exacerbated by the trial court's refusal to allow Hall to exercise his fifth amendment privilege, and by the persistence of the prosecutor in propounding questions to Hall which he refused to answer.

A review of the record at this preliminary stage convinces the court that these claims are of "a substantial nature upon which [the petitioner] has a high probability of success."[1] The prior statements made at Hall's plea proceedings were purportedly designed to refresh the witness's recollection. But because he never affirmed the truth of these statements at trial, they did not serve this function. Moreover, they were admitted without a cautionary instruction that they were to be considered only for purposes of impeachment. Thus, it would seem that the jury was permitted to consider them as substantive evidence which incriminated Rado. However, because Hall refused to affirm these state-

ments at trial and because he invoked the fifth amendment privilege, these statements were hearsay which could not be the subject of cross-examination. At first blush, the circumstances of this case appear to be indistinguishable from those involved in *Douglas v. Alabama,* 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965), in which the Supreme Court found a denial of the right of confrontation.[2] Furthermore, it would seem that the admission of these statements was prejudicial to Rado, because the remainder of the evidence against him was largely circumstantial. Thus, the petition for habeas corpus appears to present a "clear case on the law" and "a clear, and readily evident, case on the facts."

■ For all of the foregoing reasons, the circumstances of this case warrant the court, in the exercise of its discretion, to admit the petitioner to bail pending the final disposition of this case on the merits. Bail is fixed at $75,000 and may be satisfied by a surety bond in the amount of $50,000, or property having a value of $75,000. This case calls for expedited treatment, and a pre-trial conference will be scheduled as soon as counsel can agree upon a date. In the meantime, counsel should endeavor to stipulate to as many of the facts as possible.

It is SO ORDERED.

1. A previous application for bail was denied by this court. However, the merits of the petitioner's constitutional claims were not fully explicated at that time.

2. In upholding Rado's conviction, the state Supreme Court distinguished *Douglas v. Alabama,* in the following way:
   "The defendant claims support for his position in *Douglas v. Alabama,* 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934, where the court held that it was a violation of the defendant's constitutional right to permit the state's attorney to use a confession signed by an accomplice to refresh the accomplice's recollection when he was called as a state's witness and relied on his privilege to refuse to answer. In pointing out that effective confrontation by cross-examination of the witness was made impossible by his refusal to answer, the court in *Douglas,* quoting [*Namet v. United States,* 373 U.S. 179, 83 S.Ct. 1151, 10 L.Ed.2d 278 (1963)] stated (p. 420, 83 S.Ct. 1151): 'The circumstances are therefore such

that "inferences from a witness' refusal to answer added critical weight to the prosecution's case in a form not subject to cross-examination, and thus unfairly prejudiced the defendant." ' *Here, confrontation of Hall was made possible by his affirmation of the questions propounded to him by the state's attorney, specifically affirming that the prior statements he had made in open court, as recorded in the transcript, were his and were true* and concerning which the defendant could and, in fact, did cross-examine him at length. The court did not err in permitting the state's attorney to cross-examine Hall from the transcript of his statements made in open court at a prior hearing."
   *State v. Rado,* Conn., 372 A.2d 159 at 162 (1976) (emphasis added). However, a review of the transcript does not support this critical distinction, for it appears that Hall refused to affirm the truth of the statements. Transcript, December 7, 1972 at 34–38.