428 So.2d 309 (1983)
In the INTEREST of W.B., a child.
Nos. 81-494, 81-754.
District Court of Appeal of Florida, Fourth District.
March 16, 1983.
Richard L. Jorandby, Public Defender, and Craig S. Barnard, Asst. Public Defender, West Palm Beach, for appellant.
Jim Smith, Atty. Gen., Tallahassee, and Max Rudmann, Asst. Atty. Gen., West Palm Beach, for appellee.
GLICKSTEIN, Judge.
Appellant is a juvenile who, at the age of fourteen, was described by the trial judge in 1979 as follows:
Giving [W.B.] a stern warning is like dropping a shot of liquor in a gas tank and hoping it will run.
At that time, the petition for adjudication of delinquency alleged in one case alone three separate incidents of breaking and entering dwellings. His special public defender was able to negotiate an adjudication of delinquency as to those counts in exchange for the nolle prosequi of four other separate cases and abandonment by the state of its motion for waiver of jurisdiction to the adult court. The nolle prosequi noted that appellant testified on behalf of the state in a murder trial; and the transcript of the proceeding in 1979 painted grim allegations of this youngster.
At the hearing on the change of plea, the trial judge committed appellant to the Division of Youth Services pursuant to the adjudication; *310 and the subsequent written order expressly provided for the right of appeal. However, the transcript of the hearing conducted on the change of plea is silent with respect to most of the requirements of Florida Rule of Juvenile Procedure 8.130(a)(1).[1] The trial judge's dialogue with the juvenile not only reveals a failure to discuss any of the constitutional aspects involved in the change of plea,[2] it also appears to reflect a belief on the part of the juvenile that the three counts of the particular charge were to be dropped.[3] This latter aspect is discussed hereinafter.
*311 In 1980, appellant was charged with a new offense as an adult and was placed into pre-trial custody. His public defender filed a motion for post-conviction relief, asserting that the plea in 1979 was not voluntarily entered. An obvious purpose of such motion was to eliminate the 1979 adjudication of delinquency so that the new charge would have to be transferred to the juvenile division. Such transfer would have been required because of an anomalous loophole in section 39.04(2)(e)(4), Florida Statutes (Supp. 1980), which then existed.[4] As written, if the juvenile was charged with anything  misdemeanor or felony  he was entitled to seek such transfer. Although the Legislature eliminated the loophole in 1981 by amending the last sentence of the foregoing section to provide that such transfer would take place when the juvenile was charged with a misdemeanor, the amendment took effect after appellant's subsequent charge.
This gap provided the "nexus" for the juvenile to file his motion for post-conviction relief, which was supplemented by a latter alternative petition for habeas corpus. We use the term "nexus" because it is unnecessary, when seeking habeas corpus, for the prisoner to be in custody from the actual conviction which he seeks to have set aside through issuance of the writ. In the present case, as we have said, appellant's present custody was the result of the new charge  not the old. But if the earlier adjudication should fall, appellant's pre-trial adult custody also would fall. The concept is not of our creation, having been woven into the thread of law evolving from the application of the federal statute[5] from *312 which Florida Rule of Criminal Procedure 3.850 was derived. Although both parties agree that the latter rule does not apply to juveniles,[6] there is no question that habeas corpus is available to juveniles.[7]
Moreover, because of Robinson v. State, 373 So.2d 898 (Fla. 1979), we are not troubled by the fact that the collateral relief could have been sought by appeal from the adjudication. The supreme court expressly held in Robinson:
We recognize that the failure of a defendant to raise the issue of the validity of the plea by an appeal does not prohibit him from subsequently seeking collateral relief if the issues have not been previously addressed and ruled upon.
Id. at 903. See also LeDuc v. State, 415 So.2d 721 (Fla. 1982).
Accordingly, under the circumstances of this case, appellant properly sought relief by way of habeas corpus to determine if his 1979 adjudication resulted from a voluntary plea. Although appellant's remarks during the 1979 proceedings are consistent with those facts alleged in his motion for post-conviction relief, we believe an evidentiary hearing should be conducted to determine the voluntariness of his plea. Therefore, we reverse and remand with direction to conduct such hearing, make findings of fact, determine the voluntariness of the 1979 plea and enter an appropriate order. The order should contain the trial court's conclusions as to the adjudication and its effect upon appellant's right to seek transfer of the adult charge brought against him in 1980.
LETTS, C.J., and DOWNEY, J., concur.
NOTES
[1] Rule 8.130(a)(1) provides:

(1) In delinquency cases the child may plead guilty, nolo contendere, or not guilty. The court may refuse to accept a plea of guilty or nolo contendere, and shall not accept either plea without first determining that the plea is made voluntarily and with a full understanding of the nature of the allegations and the possible consequences of such plea and that there is a factual basis for such plea.
[2] In Boykin v. Alabama, 395 U.S. 238, 242-43, 89 S.Ct. 1709, 1711-12, 23 L.Ed.2d 274 (1969), the Supreme Court was concerned with an adult. Accordingly, while its following statements as to trial by jury would be inapplicable to this case, everything else that is said would apply:

Ignorance, incomprehension, coercion, terror, inducements, subtle or blatant threats might be a perfect cover-up of unconstitutionality. The question of an effective waiver of a federal constitutional right in a proceeding is of course governed by federal standards. Douglas v. Alabama, 380 U.S. 415, 422, 85 S.Ct. 1074, 1078, 13 L.Ed.2d 934.
Several federal constitutional rights are involved in a waiver that takes place when a plea of guilty is entered in a state criminal trial. First, is the privilege against compulsory self-incrimination guaranteed by the Fifth Amendment and applicable to the States by reason of the Fourteenth. Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653. Second, is the right to trial by jury. Duncan v. Louisiana, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491. Third, is the right to confront one's accusers. Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923. We cannot presume a waiver of these three important federal rights from a silent record.
(Footnote omitted.) See also In re Gault, 387 U.S. 1, 49, 87 S.Ct. 1428, 1455, 18 L.Ed.2d 527 (1967), in which the court said:
[J]uvenile proceedings to determine "delinquency," which may lead to commitment to a state institution, must be regarded as "criminal" for purposes of the privilege against self-incrimination.
[3] The dialogue was as follows:

[W.B.]: Can I say something? On those three, and then George Nelson came up here and seen you and he says I take him out to show him the one that I did he would drop them, right?
THE COURT: No. He said, any one that you show him on that ride he would drop.
[W.B.]: Yeah. And, I showed him them three.
THE COURT: Yeah.
[W.B.]: And he said I wouldn't be charged with them. Then they sent me back to the jail. I stayed there for about, around about three weeks later they send me a paper say, contempt court. Round about five papers. Then in a day they send me some more papers saying a waiver of juris-something. I don't ...
THE COURT: Waiver of jurisdiction.
[SPECIAL PUBLIC DEFENDER]: [W.B.], I'm just telling you what contempt of court is, meaning that when they let you out on your own back on the streets you did something else, you see? So the conditions upon which they let you out you have violated, so that is in contempt of court, on the order of the court. The Judge tell you you got to live honorably and straight my lad and don't get in no trouble. If you in trouble, then you in contempt of court. That's what that paper was about. And, the other paper, was they was going to waive you from the juvenile division and put you in the adult Court. That's what that paper was for.
THE COURT: That's right. That's 45 years worth of time in that paper. [The special public defender] just arranged for you to go probably to Okeechobee or some juvenile program again to get it together again. You were facing 45 years in prison. Do you understand that?
[W.B.]: Yes.
THE COURT: How old are you?
[W.B.]: Fourteen.
THE COURT: Do you know how long it takes to get to be eligible for parole when you get sentenced to 45 years?
[W.B.]: No, sir.
THE COURT: Fifteen years. You just double your age and you would be one year from getting out.
[SPECIAL PUBLIC DEFENDER]: Now, let me ask. You say you might. Can I get a clarification on what you are going to do with those other cases? I thought you were going to drop them.
[PROSECUTOR]: They will.
[SPECIAL PUBLIC DEFENDER]: Alright.
THE COURT: Alright. That's all.
[4] At that time, section 39.04(2)(e)(4) provided:

The state attorney may:
....
4. With respect to any child who at the time of commission of the alleged offense was 16 or 17 years of age, file an information when in his judgment and discretion the public interest requires that adult sanctions be considered or imposed. Upon motion of the child, the case shall be transferred for adjudicatory proceedings as a child pursuant to s. 39.09(1) if it is shown by the child that he had not previously been found to have committed two delinquent acts, one of which involved an offense classified under Florida law as a felony... .
[5] 28 U.S.C.A. § 2255. With respect to the statute, 17 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 4262, at 610-13 (1978), notes the following:

A prisoner who is in custody when he files for habeas corpus may challenge his present sentence, even though a future sentence, which he is not challenging, awaits him should he succeed in voiding the present sentence. He may challenge the future sentence, to be served at the completion of his present sentence, although he does not attack the present sentence, and may do so even though the future sentence is in another jurisdiction. Indeed he may attack detainers from another jurisdiction though they have not yet ripened into sentences. A prisoner who is serving within the limits of the shorter of two or more concurrent sentences may challenge the validity of the longer sentence.
Indeed there are circumstances in which a prisoner may use habeas corpus to attack the validity of some earlier sentence that he has already served. This will occur if the earlier conviction was used to enhance his punishment on the conviction for which he is presently in custody or if the invalidation of the earlier sentence would result in credit against the sentence presently being served for the time spent in detention on the earlier sentence or if the earlier conviction was used to impeach the defendant at the trial resulting in the sentence he is presently serving.
The kind of custody that will suffice is judged by a very liberal standard, and any restraint on a petitioner's liberty because of his conviction that is over and above what the state imposes on the public generally will suffice. This was the holding of the 1963 decision that began the change in the law on the custody requirement. The specific holding of that decision, which of course has since been followed, is that a prisoner who is free on parole is sufficiently in custody that he may seek habeas corpus. The same result is reached with regard to a defendant who is put on probation and faces the threat of future imprisonment if the conditions of probation are not complied with and to a defendant who is given a suspended sentence that carries a threat of future imprisonment. One who has been sentenced but has not yet begun service of his sentence is in custody within the meaning of the statute.
The lower courts have followed the lead of the 1973 decision in the Hensley case and have held that a convicted defendant who is free on bail or his own recognizance prior to beginning his sentence is in custody for purposes of habeas corpus. The matter is more complicated if the writ is sought by one who is out on bail prior to trial.
(Footnotes omitted.) See also Escobedo v. Estelle, 655 F.2d 613, 614 (5th Cir.1981), wherein the court said:
We held in Sinclair v. Blackburn, 599 F.2d 673, 676 (5th Cir.1979), cert. denied, 444 U.S. 1023, 100 S.Ct. 684, 62 L.Ed.2d 654 (1980), that "`in custody' does not necessarily mean `in custody for the offense being attacked.' Instead, jurisdiction exists if there is a positive, demonstrable relationship between the prior conviction and the petitioner's present incarceration."
(Footnote omitted.)
[6] The parties respectively point out (1) that Florida Rule of Criminal Procedure 3.850 is available to prisoners "in custody under sentence of a court," whereas section 39.10(4), Florida Statutes (Supp. 1980) provides that adjudication of delinquency is not a conviction and the juvenile is not a criminal; and (2) that Florida Rule of Juvenile Procedure 8.240(b) provides for extraordinary relief, although in a manner more similar to Florida Rule of Civil Procedure 1.540(b), than to the federal habeas corpus statute.
[7] See Richardson v. State ex rel. Milton, 219 So.2d 77 (Fla. 3d DCA 1969). The parties disagree as to the extent of the writ's availability; but we reject the state's position that it is available only if the original proceedings were void. As we have alluded, Florida Rule of Juvenile Procedure 8.240(b) is very limited in its relief to juveniles. It authorizes reliance thereon only for specified matters and requires that proceedings be initiated within one year; whereas neither Florida Rule of Criminal Procedure 3.850 nor the federal habeas corpus statute have such limitations.