■ In the Matter of SHAUN C., a Person Alleged to be a Juvenile Delinquent, Appellant.—Order of the Family Court, Bronx County (Rhoda J. Cohen, J., at suppression hearing, fact finding and disposition), entered February 21, 1989, adjudicating defendant a juvenile delinquent following a fact-finding determination that defendant committed acts which if committed by an adult would constitute the crimes of murder in the second degree (Penal Law § 125.25 [3]), attempted robbery in the first degree (Penal Law §§ 110.00, 160.15 [4]), criminal use of a firearm in the first degree (Penal Law § 265.09 [1]) and criminal possession of a weapon in the second degree (Penal Law § 265.03), unanimously reversed, on the law and the facts, and the case remanded for a new fact-finding hearing, without costs.

The 13-year-old defendant was adjudicated a juvenile delinquent for the October 11, 1988 shooting death of Charles Omari near Boston Post Road in Bronx County. The chief witness against defendant was his longtime friend, 14-year-old Richard Brown, who testified under a grant of transactional immunity.

According to Brown, he, his brother Raheem, the defendant and two other youths were together when they were told by another youth that Charles Omari had "a lot" of money. Brown knew that Raheem had a gun. Defendant and the others decided to look for Omari and at about 10:30 P.M. located him at the entrance to 1390 Boston Post Road, the home of Omari's brother, Axel Ofori. Omari's head was bleeding. Omari then walked up the block and defendant, Brown and the others followed him. When the group stopped following, Omari walked away. Then defendant said to Raheem, "Give me the gun". Defendant took the gun, ran after Omari, pointed it at him and said, "Give me your money." Brown then heard the gun discharge, and observed Omari fall and the defendant flee. Upon cross-examination, Brown admitted that the reason the group was looking for Omari was because they knew that he had money, and testified, "I know he was going to rob him. * * * I wasn't going to rob him. I don't know about the other people."

Mr. Ofori testified that he remained outside after Omari,

who appeared to have been already "beaten up", left the house, that defendant and the other youths followed Omari and that five minutes later he heard a gun shot. He then observed his brother limping towards him and bleeding from the chest. Omari later died at a hospital. A pathologist determined the cause of death to be a gunshot wound to the chest.

A detective testified that the following day he received a call from defendant's grandmother. That evening, defendant and his uncle accompanied the detective to the precinct where defendant told the detective, "I shot the guy." Following a *Huntley* hearing, the court ruled defendant's statements to have been freely and voluntarily made.

During the cross-examination of Brown, defendant's Law Guardian sought to question Brown regarding prior unrelated bad acts. Specifically, the Law Guardian advised the court that he had received information that Brown had stolen a bicycle in July of 1988 and had on several occasions stolen bus passes from classmates. The Law Guardian argued that these larcenous acts bore directly on Brown's credibility. The court precluded such inquiry, not for failure in counsel's offer of proof, but for lack of relevancy, stating: "I see no connection between the acts that you just described, and this particular incident which is before me, so for that ground, I am sustaining the objection."

It is a fundamental right of an accused to confront the witnesses against him. (US Const 6th, 14th Amends; *Douglas v Alabama,* 380 US 415, 418 [1965]; *Pointer v Texas,* 380 US 400, 403-406 [1965]; *People v Becker,* 210 NY 274, 304-305 [1914].) Essential to this right is the ability to question prosecution witnesses as to immoral, vicious or criminal acts which bear upon their credibility. *(People v Allen,* 67 AD2d 558 [2d Dept 1979], *affd* 50 NY2d 898 [1980].)* When, as here, the witness's credibility is a crucial issue in the case, the error cannot be considered harmless. *(People v Thompson,* 120 AD2d 627 [2d Dept 1986].)*

Brown offered the only eyewitness testimony as to the shooting and as to the motive for the shooting. Proof of the underlying attempted robbery was integral to the prosecution's theory of felony murder. *(See, Douglas v Alabama, supra.)* Moreover, Brown's statements that he knew that Raheem had a gun and knew that the victim was being followed for the purpose of robbing him, as well as his failure to mention the robbery in prior conversations with a detective, placed in issue Brown's complicity in the crime. (CPL

60.22.) As the trier of the fact, the court could not close its mind to relevant evidence even before that evidence was heard.

We reject defendant's contention that the "felony murder" count (Penal Law § 125.25 [3]) should have been dismissed since it is legally impossible for a 13-year-old juvenile to commit any underlying felony due to "infancy" (Penal Law § 30.00). Defendant was not found guilty of the crime of murder in the second degree, but was adjudicated a juvenile delinquent pursuant to article 3 of the Family Court Act. Any reference in that act to a "crime" includes conduct which, if committed by an adult, would constitute a crime. (Family Ct Act § 301.2 [14].) Moreover, the act designates certain conduct by juvenile delinquents as " '[d]esignated felony act[s]' " which, as defined, specifically includes conduct "which if done by an adult, would be a crime: (i) defined in [Penal Law] sections * * * 125.25 (murder in the second degree)". (Family Ct Act § 301.2 [8]; see also, Family Ct Act § 301.2 [9] [" 'Designated class A felony act' "]; People v Smith, 152 AD2d 56, 61 [2d Dept 1989] [a 13 year old could not be convicted of "felony murder" in Supreme Court but could be adjudicated a juvenile delinquent in the Family Court].)

Finally, the prosecution concedes that the criminal use of a firearm in the first degree count (Penal Law § 265.09) should have been dismissed. A person commits criminal use of a firearm in the first degree when he commits any class B violent felony offense. Defendant was charged with conduct which if committed by an adult would constitute class A-I and class C felonies. Concur—Rosenberger, J. P., Kassal, Wallach, Smith and Rubin, JJ.