Shearing, C. J.,
with whom Rose, J.,
joins, concurring:
I would reverse Silva’s judgment of conviction, but on a different ground than that proposed by the majority.
I do not agree that the repeated refusals of the witness Loehr to testify violated Silva’s right to cross-examine a witness. I believe that Douglas v. Alabama, 380 U.S. 415 (1965), is distinguishable. In Douglas, a codefendant witness, who had been tried and convicted, invoked the self-incrimination privilege. Id. at 416. The witness was an essential element of the State’s case against the petitioner. During the examination of the witness, the prosecution read a confession attributed to the witness, ostensibly to refresh his memory. The Supreme Court held that “effective confrontation of [the witness] was possible only if [he] affirmed the statement as his” and “inferences from [the] witness’s refusal to answer added critical weight to the prosecution’s case in a form not subject to cross-examination.” Id. at 420. The court held that the petitioner’s inability to cross-examine the witness violated the confrontation clause and reversed the conviction.
The situation in Silva’s case is quite different. There were no statements attributed to Loehr which implicated Silva. Thus, there were no statements which called for cross-examination. The confrontation clause was not even invoked, since no inculpatory *1374 statements were presented which purportedly were made by Loehr; he simply refused to testify. Neither was Loehr an essential element of the prosecution’s case. The State called eighteen witnesses and produced physical evidence, including fingerprints, that placed Silva at the scene of the crime. Alone, Loehr’s refusal to testify did not add critical weight to the prosecution’s case in a form not subject to cross-examination. See Namet v. United States, 373 U.S. 179, 186 (1963). Silva’s due process rights were not violated by Loehr’s refusal to testify.
The question remains, however, whether there was prosecu-torial misconduct. Prosecutorial misconduct occurs “when the Government makes a conscious and flagrant attempt to build its case out of inferences arising from use of the testimonial privilege,” such as putting a witness on the stand knowing he intends to invoke the privilege, or making inferences to the jury regarding a witness’s refusal to testify. Id. at 186.
It appears that the prosecutor knew before he put Loehr on the stand that he would refuse to testify. When Loehr first stated “I am not answering further questions,” the prosecutor immediately replied “because you don’t want to be a snitch up at jail, right?” That certainly indicates that the prosecutor was not surprised by Loehr’s refusal to testify, but does not indicate a flagrant attempt to build his case on inferences.
However, in closing argument, the prosecutor discussed Loehr’s failure to testify extensively. The prosecutor made the following statements in closing argument:
Brian Loehr — of course, we just brought Brian Loehr in from the Nevada State Prison so we could give him four hundred and some odd days of contempt time, but his testimony means absolutely nothing else. Well, if Michael Silva’s story was true, the man could have got up there and he could have said Michael didn’t have anything to do with it. I left him after the Sunrise Cedars Bar and I didn’t see him again. Would have saved him a lot of time in the detention center. Would have avoided the whole snitch jacket thing and according to the defendant it would have been the truth. Oh, there’s that darn truth again. Hate to use that.
Now, Brian Loehr, we know — we know why he had an easy way out. He could have said consistent with the defendant’s version, yeah, Mike didn’t have anything to do with it. He went home. I didn’t see him again. Me and Ricky Smith — some guy I don’t remember his name. Nobody knows his name in this caper. You know, me and that guy did the robbery and killed the guy. But he didn’t. He didn’t *1375 say that the defendant wasn’t involved. Now you know why he got up there and did what he did because it’s a long time before he’s coming up for any kind of parole and to walk the yard in the Nevada State Prison knowing he just came down and snitched somebody off, that’s a long time — that’s a long time to look over your shoulder every day for the next seventeen years or so.
That’s not his fault. It’s not his fault that he doesn’t want to be a snitch, but you judge his credibility. He talked. He mentioned a lot of stuff. He mentioned Mike. He mentioned living there, but when it came close, he didn’t say anything. He took his contempt. But he sure did not say Mike wasn’t involved. Now, how would that have branded him a snitch? It seems to me if there’s anything to this misguided prison code is that if he comes down and says the guy didn’t do it, if there’s any honor among thieves — if there’s any code that would have helped him out, he didn’t say that, did he? Why didn’t he just lie? I don’t know the code, but what I do know is that he did not exonerate the defendant.
Clearly the prosecutor was encouraging the jury to make a decision based on Loehr’s refusal to testify.
The Namet court noted that “courts have failed to find reversible error when such incidences were ‘no more than minor lapses through a long trial’ . . . [a]nd even when the objectionable inferences might have been found prejucial, it has been held that instructions to the jury to disregard them sufficiently cured the error.” Id. at 187 (quoting United States v. Hiss, 185 F.2d 822, 832 (2d Cir. 1950)). I cannot view the comments made by the prosecutor during closing argument as a minor lapse. The prosecutor was asking the jury to draw inferences against Silva on the basis of Loehr’s appearance at trial, when Silva had no opportunity to cross-examine Loehr. When Loehr refused to testify, the prosecutor himself supplied the reason for not testifying as Loehr’s unwillingness to be a “snitch.” Then the prosecutor used that rationale to argue that if Silva wasn’t involved, Loehr would have said so and wouldn’t have been a “snitch.” The jury is most likely to remember the inferences and incorporate them into their deliberations when they come at the close of trial without any limiting instruction. Despite the abundance of other evidence presented, I do not view this prosecutorial misconduct as harmless error and therefore would reverse this case on that ground.