**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 06a0055n.06
Filed: January 20, 2006

04-1367

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| MICHAEL WENGLIKOWSKI, | ) | |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| KURT JONES, Warden, | ) | EASTERN DISTRICT OF MICHIGAN |
| | ) | |
| Respondent-Appellee. | ) | |

Before: DAUGHTREY and MOORE, Circuit Judges; ALDRICH,[*] District Judge.

**PER CURIAM.** The petitioner, Michael Wenglikowski, is an inmate in the custody of the Michigan Department of Corrections, having been convicted in 1983 of assault with intent to commit murder and conspiracy to commit first-degree murder in the near-fatal beating of his wife, Jeanette Wenglikowski. The prosecution's theory was that petitioner had conspired with his brother to attack Jeanette and make the attack look like an anonymous mugging. During the investigation, the petitioner's brother, Mark Wenglikowski, confessed to the police that he was the person who struck the blows to the victim. When called to testify at his brother's trial, however, Mark invoked his Fifth Amendment right to remain silent and refused to testify. The state trial judge nevertheless allowed the

---

[*]The Hon. Ann Aldrich, United States District Judge for the Northern District of Ohio, sitting by designation.

prosecution to introduce a brief portion of Mark's confession through the testimony of a police officer.    Because Michael Wenglikowski was unable to cross-examine Mark concerning his inculpatory statement to police, he filed a federal habeas corpus petition alleging that the introduction of Mark's statement violated his rights under the Confrontation Clause.  Michael Wenglikowski also contended in his petition that the state court violated his right to a fair trial by failing to issue a cautionary instruction telling the jury that the brother's statement could not be used as evidence of guilt.

The district court, applying law that was clearly established at the time of the petitioner's trial in 1983, concluded that the facts established the existence of a confrontation violation but held that the violation amounted to harmless error.  We affirm, based on our conclusion – to the contrary – that there was no constitutional violation in the introduction of Mark's inculpatory statement and, therefore, no need on the part of the trial judge to caution the jury against its use as evidence against the petitioner.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

In July 1980, Jeannette Wenglikowski suffered a severe beating to the head that left her permanently brain-damaged.  In 1983, her husband, petitioner Michael Wenglikowski, was convicted in Michigan state court of assault with intent to commit murder and conspiracy to commit first degree murder.  The government alleged that the petitioner's brother, Mark Wenglikowski, was his co-conspirator, but the two men were tried separately.

The record establishes that, in the spring and summer of 1980, Jeannette and Michael Wenglikowski were experiencing marital problems because Michael had a girlfriend. On the night that she was brutally assaulted, witnesses saw Jeanette and Michael embroiled in an argument at an establishment called My Bar and heard the petitioner call Jeannette names. At some point during the evening, the couple was met at My Bar by Michael's brother, Mark. According to the testimony at trial, Mark and Michael spent several minutes talking in the mens' room, and then Mark left the establishment. Shortly thereafter, Michael and Jeanette also left the bar, but instead of returning to their car, they began walking out to a deserted and unlit field behind the bar. Testifying in his own defense, Michael said that they were looking for wooden crates to use as kindling. He also said that while walking with Jeannette in the deserted field, he saw his brother Mark's car parked on the edge of a small private road abutting the field. Tire marks from Mark's car and imprints from his shoes were later found in the field.

Witnesses testified that, approximately ten minutes after leaving the bar, petitioner returned and said he and his wife had been mugged. In fact, Jeannette had been beaten so severely that, according to the doctor who treated her, "[h]er eyes were protruding out of the socket and she had some multiple wounds over . . . her head and face. All the wounds were multiple lacerations all the way deep to the bone." The doctor also testified that Jeannette was "deeply comatose" and that he thought she was going to die.

The petitioner told the police that he had been struck in the back by an unseen attacker and then fell unconscious, waking up to find his wife lying injured beside him. But, in contrast to Jeannette's nearly-fatal wounds, her husband received only two red marks on his back. He did not suffer any internal injuries; his skin was not even broken by the attack; and he did not demonstrate any of the common signs, such as unequal pupils or grogginess, of a person who had recently been rendered unconscious. Two doctors testified that it would be highly unlikely, perhaps impossible, for a person to be rendered unconscious as a result of injuries such as those petitioner suffered.

At trial, the government argued to the jury that petitioner had conspired with his brother to kill Jeannette and make the murder look like a mugging. A third Wenglikowski brother, Gary, testified that, a few months before the incident, the petitioner told him he did not want to be married to Jeannette anymore, but could not divorce her because he "was afraid of losing everything that he had." Gary Wenglikowski also testified that the petitioner talked about using drugs to "get rid of" Jeannette. The prosecution further supported their theory of the case by introducing a statement that Mark Wenglikowski later made to police in which he admitted that he was the person who struck Jeannette. However, Mark himself did not testify because he asserted his right against self-incrimination, and his statement was introduced through the testimony of an officer who took Mark's confession some three years after the assault on Jeannette occurred.

That lapse came about as a result of a delay in charging the two brothers while the police continued to investigate the case, collecting physical evidence of various kinds, and then discovered that Michael and Mark Wenglikowski had left the state. Eventually, police were contacted by a Wenglikowski sibling, Sandra Boyle, who offered to assist police in convincing Mark to come back to Michigan from California and give them information that he had implicating his brother Michael in the attack on Jeannette. After Mark was persuaded to return, he gave a taped statement implicating the petitioner. Eventually, however, Mark admitted to the police that he was the one who attacked Jeannette and claimed that he had done so as part of a plan that he and Michael concocted. He further stated that he hit Michael twice across the back to make it look as if Michael had also been attacked.

Both Mark and Michael Wenglikowski were charged in the assault, but they were tried separately. Michael was convicted and sentenced to concurrent terms of 60-90 years' imprisonment for assault with intent to kill and for conspiracy to commit first degree murder. On appeal, the Michigan Court of Appeals changed the sentence on the conspiracy charge to a life sentence, but the court affirmed the conviction in all other respects. The Michigan Supreme Court rejected petitioner's request for review on March 24, 1986, thus rendering petitioner's conviction final. On November 19, 1999, petitioner filed a petition for a writ of habeas corpus, raising several different claims, of which only two are currently at issue. On February 24, 2004, the district court denied relief on the grounds that, although the

state trial court violated clearly established federal law by allowing a portion of Mark Wenglikowski's confession into evidence, the error was harmless.

## II. <u>DISCUSSION</u>

### A. Standard of Review

On appeal from the denial of habeas relief, we review the district court's legal conclusions *de novo* and its factual findings for clear error. *Hill v. Hofbauer*, 337 F.3d 706, 710 (6th Cir. 2003). Because Michael Wenglikowski filed his habeas petition in 1999, the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) applies. AEDPA mandates that this court may grant a writ of habeas corpus only if the state trial court's decision:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A state trial court decision is "contrary to" federal law under the AEDPA standard "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A state court's decision is an "unreasonable application" of

federal law where the court "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* In the case at hand, the district court found that the state court decision to admit part of Mark Wenglikowski's confession was "contrary to" clearly established federal law regarding the Confrontation Clause. Upon *de novo* review, we conclude that this decision was in error.

## B. The Confrontation Clause Challenge

The statement at issue was introduced through the testimony of the local detective who interrogated Mark and who testified as follows:

> Q. Sir, concerning your conversation with Mark Wenglikowski concerning the incident on July 1st, 1980, at approximately 11:30 p.m., do you recall that?
> A. Yes. . . .
> Q. Did he [Mark] say who struck Jeannette Wenglikowski on that night?
> A. Yes.
> Q. Did he say that he struck Jeannette Wenglikowski on that night?
> A. Yes.

The state trial judge held that this testimony was admissible as a statement against penal interest after Mark Wenglikowski invoked the Fifth Amendment and refused to testify at his brother's trial. The judge relied upon the Supreme Court's then-current ruling in *Ohio v. Roberts*, 448 U.S. 56, 66 (1980), in which the Court ruled that a hearsay statement was

admissible, and not in violation of the right to confrontation, if the statement fell within a firmly-rooted exception to the hearsay rule or otherwise carried indicia of reliability.

In the years since the petitioner's trial, the Court's Confrontation Clause jurisprudence has undergone considerable change and, as a result, a similar ruling in a contemporary trial could not be sustained because of the testimonial nature of Mark Wenglikowski's statement. *See Crawford v. Washington*, 541 U.S. 36 (2004). The question, however, is whether the testimony was admissible under clearly established Supreme Court precedent at the time when petitioner's conviction became final in 1986. *See Teague v. Lane*, 489 U.S. 288, 310 (1989).

In finding that the introduction of the statement at issue violated the Confrontation Clause at that time, the district court relied on *Douglas v. Alabama*, 380 U.S. 415 (1965), explicitly concluding that "this case is 'materially indistinguishable' from *Douglas*, and that the trial court's failure to suppress Mark Wenglikowski's confession was therefore 'contrary to' that Supreme Court decision." On review of the district court's opinion, however, we find its analysis internally inconsistent and the facts of this case sufficiently different from those in *Douglas* to make the rule in that case inapplicable here.

In the first place, the district court endorsed the magistrate judge's conclusion that the Supreme Court's 1968 opinion in *Bruton v. United States*, 391 U.S. 123 (1968), was inapplicable to the petitioner's confrontation challenge, not only because the Wenglikowski brothers were not jointly tried, but also because "*Bruton*, by its terms governs only

confessions that 'expressly implicate' the defendant," which the brief statement introduced in this case clearly did not do. Given this recognition, the district court's reliance on *Douglas* is puzzling, because the accomplice's statement did expressly implicate the defendant in that case. *See Douglas*, 380 U.S. at 419 ("Loyd's alleged statement that the petitioner [Douglas] fired the shotgun constituted the only direct evidence that he had done so."). It is possible that the district court was focused on language in the *Douglas* opinion concerning the formation of a "crucial link in the proof" supplied by the accomplice's statement, *id.*, because of the implication that could be drawn from Mark Wenglikowski's self-inculpatory statement in terms of the prosecution's conspiracy theory – one that the prosecution obviously hoped that the jury would draw. But it is also obvious that nothing in the brief testimony describing Mark's statement to police directly implicated the petitioner in the assault on his wife. Indeed, had the two brothers been tried jointly, the testimony would have been admissible under *Bruton.* It is therefore analytically difficult to understand what would make it inadmissible in the separate trial of either brother.

In the months and years following the conviction in this case, the Supreme Court has expounded on the principle first articulated in *Douglas*, repeatedly holding "presumptively unreliable [those] accomplices' confessions that incriminate defendants." *Lee v. Illinois*, 476 U.S. 530, 541 (1986); *see also Lilly v. Virginia*, 527 U.S. 116, 133 (1999) ("It is clear that our cases consistently have viewed an accomplice's statements that shift or spread the blame to a criminal defendant as falling outside the realm of those 'hearsay exception[s] [that are] so trustworthy that adversarial testing can be expected to add little to [the

statements'] reliability.") (quoting *White v. Illinois*, 502 U.S. 346, 357 (1992) (alterations in original)).  But, of course, nothing in the statement at issue here tended to "shift or spread the blame" to the defendant on trial and, thus, it did not run afoul of *Douglas* or its progeny. Moreover, the Supreme Court has explicitly rejected the "contextual implication" doctrine that the petitioner would have us apply in this case in order to find that indirect incrimination should be held to violate a defendant's confrontation rights, noting in the *Bruton* setting that such a rule "would presumably require the trial judge to assess at the end of each trial whether, in light of all the evidence, a nontestifying codefendant's confession has been so 'powerfully incriminating' that a new, separate trial is required for the defendant." *Richardson v. Marsh*, 481 U.S. 200, 209 (1987).  In short, we find no constitutional obstacle to the introduction of Mark's statement to police at the petitioner's trial.

## C.  Request for Jury Instruction

The petitioner's second claim for habeas relief rests on the trial court's refusal to give a cautionary instruction limiting the jury's use of Mark  Wenglikowski's confession.  At his trial, the petitioner requested that the jury be instructed "that the statements of Mark Wenglikowski could in no way be used or considered against Michael Wenglikowski." However, on appeal he has failed to submit any compelling arguments as to why he was entitled to such an instruction.  As the district court found, federal constitutional law at the time of petitioner's trial did not require the state trial court to issue a cautionary instruction about the confession of an accomplice.  More importantly, because we have held that the

statement was properly introduced as a statement against penal interest and, therefore, as an exception to the hearsay rule and in compliance with the Confrontation Clause jurisprudence at the time of trial, the petitioner was not entitled to a cautionary instruction.

### III.  <u>CONCLUSION</u>

For the reasons set out above, we AFFIRM the judgment of the district court denying relief to the petitioner.