[No. E021252. Fourth Dist., Div. Two. Aug. 10, 1999.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT BERNETT DUKE, Defendant and Appellant.

[No. E021607. Fourth Dist., Div. Two. Aug. 10, 1999.]

THE PEOPLE, Plaintiff and Respondent, v.
RICHARD ALLEN HANN, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts 2.a., 2.b., 2.c., 3.a. and 3.b.

**COUNSEL**

David Y. Stanley, under appointment by the Court of Appeal, for Defendant and Appellant Robert Bernett Duke.

Mark D. Greenberg, under appointment by the Court of Appeal, for Defendant and Appellant Richard Allen Hann.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, William M. Wood and Carl H. Horst, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**RAMIREZ, P. J.**—In a joint trial, a jury convicted Robert Bernett Duke and another jury convicted Richard Allen Hann of first degree murder (Pen. Code, § 187), and made the special circumstance findings that each murder occurred during a robbery (Pen. Code, § 190.2, subd. (a)(17)(i)) and during a kidnapping for robbery (Pen. Code, § 190.2, subd. (a)(17)(ii)). Duke's jury further found that the murder involved torture. (Pen. Code, § 190.2, subd. (a)(18).) In bifurcated proceedings, Hann admitted suffering three prior convictions for which he served prison terms. (Pen. Code, § 667.5, subd. (b).) He was sentenced to prison for life without the possibility of parole, plus three years. Duke was sentenced to prison for life without the possibility of parole, plus one year, under Penal Code section 667.5, subdivision (b). Both defendants appeal. Hann raises jury instruction issues, in which Duke joins, all of which we reject. We therefore affirm his conviction. Duke raises an evidentiary issue, which we reject. However, we agree with his contentions that he should not have received a one-year sentence under Penal Code section 667.5, subdivision (b), and that the trial court erred in calculating his presentence custody credits. Therefore, we affirm his conviction, while reversing the one-year sentence, leaving the People the option to retry him on the prior allegation, and we correct the calculation of his credits.

### FACTS

The following is based on the testimony of Duke's girlfriend about the crime. The girlfriend, a drug addict, supported herself and her teenage son by, inter alia, presenting herself as a prostitute, but talking her customers out of their money or leaving with their money rather than actually having sex with them. By her account, both Duke and Hann agreed to participate in this activity with her on July 5, 1993. Accordingly, she positioned herself at a fast-food restaurant near the garage she occupied with Duke and met up with the victim, who responded affirmatively to her invitation to "party." She and the victim agreed to meet at a later time, and the girlfriend told Duke and Hann that the victim would be returning for her. When he did, the girlfriend told the victim that she needed food for her son, so the victim took her and her son in his truck to two automated teller machines where he withdrew $20 at the second one, the first having been nonfunctional. The girlfriend asked the victim for another $20 and he obtained it from the machine. At some

point, she noted that the victim had about $200 remaining in his checking account. The three went to another fast-food restaurant where some of the money the victim had withdrawn from the machine was spent on food for the girlfriend and her son. The victim then dropped the girlfriend and her son off at the garage, promising to return soon. The girlfriend told Duke and Hann that the victim had more money in his checking account and would be back. Duke told his girlfriend's son to go into and stay in the house in front of the garage.

After the victim returned to the garage and began conversing with the girlfriend, Duke and Hann entered and acted as though they were angry that the victim was with the girlfriend. Hann began hitting the victim, grabbing him by the throat and slapping him. He beat the victim for 15 to 20 minutes, ignoring the latter's pleas to stop. Hann forced the victim to remove the antitheft device from his truck and he took the keys to it. The victim's wallet was taken and "probably" all three went through it. Hann drove the victim's truck, the victim sat in the middle, Duke's girlfriend "rode shotgun" and Duke sat in the truck bed. Hann drove to an automated teller machine, telling the victim that he was going to come up with some money or Hann would stuff him into the toolbox in the truck bed. Hann hit the victim's face with his elbow, causing the back of the victim's head to hit the rear windshield of the truck. Duke and his girlfriend tried to get money at the automated teller machine, but it didn't work. Hann drove to a second machine, but Duke and his girlfriend were again unsuccessful. The girlfriend asked to be, and was, taken home, after which Duke, Hann and the victim left again in the victim's truck with Hann driving. The girlfriend had no further contact with Duke and Hann until the next morning, when she saw them wearing the same clothes they had been wearing the night before. They told her they had walked from Rubidoux. One said they had left the victim unconscious in his truck, which was out of gas. Duke had the victim's ring; Hann had his watch. Hann also had the pool cue that the victim kept in his truck bed. At some point, Hann admitted to Duke's girlfriend that he needed money to pay for his motel room, to get his car fixed and to bail his own girlfriend out of jail.

Much of what Duke's girlfriend testified to was corroborated by the testimony of other witnesses at trial. The testimony of a male friend of Hann's and of Hann's girlfriend as to statements Hann made to them about the crime will be described elsewhere in this opinion. Their testimony was also corroborated by that of other witnesses.

On July 6, the victim's truck was found submerged in a pond at the bottom of a rock quarry in Rubidoux. The victim's body was found inside the also submerged toolbox, which had been in the truck bed. With its engine

running, the truck had gone off a cliff into the quarry, striking the wall on the way down.

According to the pathologist who performed the autopsy, the cause of death was strangulation, although he could not rule out drowning. Blunt force trauma to the head, which could have been caused by the victim being "elbowed" and hitting a windshield or by his fall from the cliff in the box, was a contributing factor. Although the doctor thought the victim was not alive when he had been put into the toolbox, he allowed that he could have been. Decomposition of the body had badly obscured injuries to the outer surface of the victim's body.

ISSUES AND DISCUSSION

1. *Admission of Hann's Statements to His Male Friend*

A male friend of Hann's testified at trial that the morning after the murder, Hann told him and the friend's girlfriend that he had just beaten up someone for money. After the girlfriend left the motel room the three were sharing, Hann tearfully told his friend that Duke and Duke's girlfriend, outside Hann's presence, had devised the plan to lure the victim into the garage. He recounted that after Duke's girlfriend got the victim into the garage, he and Duke came in and slapped the victim around to make it look like Duke's girlfriend was the girlfriend of one of the men. Then they took the victim to two banks—one in Pomona—and at both, Hann avoided the front of the automated teller machines so he would not be photographed. Hann admitted that he intended to use the victim's identification to visit his own girlfriend, who was in jail.[1] Hann showed his friend what he claimed were teeth marks on his upper arm supposedly made by the victim when Hann struck him in the face while driving the victim's truck. He explained he hit the victim because the latter was unable to get money out of the bank so Hann could bail his girlfriend out of jail. Hann claimed he knew the victim had $200 in the bank. Three times Hann asked the victim if his life was worth the money. Although the victim said he would get the money, he could not. Hann reported that the victim kept going in and out of consciousness and at times the victim was delirious. Hann said that both he and Duke beat the victim, adding that Duke had taken the victim into the alley and slapped him around. He said that at some point, they planned to leave the victim in the toolbox of his truck to see if he would cooperate. Hann said he and Duke had killed the victim, so the victim could not identify them, by putting him in the toolbox and driving the truck over a cliff into a quarry. He admitted it was his idea to go to the quarry. He said he and Duke walked from Rubidoux. He said

---

[1]Both the victim and Hann had blond hair.

$40 had been taken from the victim—Hann got $20 of it,[2] along with the victim's watch. He said Duke ended up with the victim's wallet, which Duke had thrown out the window as they were driving down the freeway. Hann's friend admitted on the stand that he could not recall precisely which of the above-described acts Hann said he did himself and which were done by both Hann and Duke.

Before trial began, Duke had objected to the admission of all of Hann's statements on the bases, inter alia, that they were not admissions against Hann's interest and their admission would violate the confrontation clause, as Hann opted not to testify at trial. The trial court overruled his objections, concluding, "[T]he statements . . . bear adequate indicia of reliability in that they fall within a firmly rooted exception to the hearsay rules and are found to be reliable by independent evaluation of the surrounding circumstances that there is no confrontation clause problem."[3] Duke here takes issue with this ruling.[4]

A point neither party mentions, but which we find relevant to this discussion, is the fact that Duke's jury was given what the trial court informed it was an "admonition" concerning the testimony of Hann's male friend. The trial court said, "The other day you heard the testimony of [Hann's male friend]. And during his testimony, he related to you certain . . . out-of-court statements that he heard from one of the defendants. So there's something I want to state to you to clarify the nature of that testimony. [¶] . . . [¶] Defendant Duke cannot call Hann as a witness because Defendant Hann is

---

[2] However, later, Hann said he had gotten none of the money.

[3] This later test is referred to in *Lilly* v. *Virginia* (1999) 527 U.S. 116, ___ [119 S.Ct. 1887, 1897-1900, 144 L.Ed.2d 117] as the "residual trustworthiness test." Contrary to the assertion of appellate counsel for Duke at oral argument, the issue whether Hann's statements met this test was litigated thoroughly below, with both parties describing in detail the statements and the circumstances under which they were made (the People contending they were voluntarily and spontaneously made in casual conversation with a friend within a day of the crimes and before his arrest; they indicated Hann's firsthand knowledge of the facts and his realization that they were against his interest; that Hann had no apparent motive to lie and he did not attempt to shift blame or deny his involvement as the actual killer) and arguing whether those rendered the statements trustworthy in their written briefs. At the hearing on the motion, the prosecutor contended that the statements indeed were trustworthy, based on who made them, to whom they were made (including the fact that it was not a law enforcement officer) and the circumstances under which they were made, emphasizing that Hann had no motive to minimize his involvement to his friend. Duke countered by arguing that in his statements, Hann shifted the blame to Duke and Duke's girlfriend. In ruling the statements were admissible, the trial court clearly accepted the arguments of the prosecutor and rejected those of counsel for Duke, expressly ruling that, completely unrelated to the declaration-against-interest-as-a-firmly-rooted-exception theory to avoid a confrontation violation, they met the residual trustworthiness test.

[4] Before Hann's male friend began testifying at trial, Duke stated a continuing objection to the evidence on the bases asserted pretrial.

privileged not to be called as a witness under the California and United States Constitutions and under California Evidence Code Section 930. [¶] The fact that Duke cannot call Hann as a witness and propound questions to him is a factor you may consider in determining how much weight, if any, to give to any out-of-court statements . . . Hann made that have been introduced as evidence against Duke." At the end of trial, the Duke jury was further instructed, upon request by Duke: "You have received evidence in this case concerning the out-of-court statements. The mere fact that the evidence was admitted does not mean that the court found the . . . [statements] to be accurate, reliable or trustworthy. You are the exclusive judges of the evidence and the weight, if any, [the evidence] should be given."

In his opening brief, Duke does not contend that the statements were not declarations against interest, nor does he contend that the trial court erred in concluding that the residual trustworthiness test had been met.[5] Rather, ▮ he suggests that even if they were declarations against interest, their admission still violated the confrontation clause. We disagree.

▮ When statements are admitted under a firmly rooted exception to the hearsay rule or when they contain particularized guarantees of trustworthiness such that adversarial testing would be expected to add little, if anything, to their reliability (the "residual trustworthiness test"), their admission does not violate the confrontation clause. (*Lilly* v. *Virginia, supra,* 527 U.S. at p. __ [119 S.Ct. at pp. 1897-1900];[6] see also *White* v. *Illinois* (1992) 502 U.S. 346 [112 S.Ct. 736, 116 L.Ed.2d 848]; *Idaho* v. *Wright* (1990) 497 U.S. 805 [110 S.Ct. 3139, 111 L.Ed.2d 638]; *Bourjaily* v. *United States* (1987) 483

[5]The assertion of appellate counsel for Duke at oral argument to the contrary, in his opening brief, Duke contends that statements of codefendants are inherently unreliable, then immediately says, "In sum, the hearsay exceptions which might be urged here by the prosecution are not so firmly rooted as to take this case outside the scope of the . . . Confrontation Clause."

In his reply brief, he makes the blanket assertion that since Hann's statements were not "100% against his penal interest," they were not "100% trustworthy." This is a far cry from arguing that the trial court abused its discretion in making the factual findings necessary and erred in concluding that the statements met the residual trustworthiness test.

It was not until oral argument that appellate counsel for Duke actually challenged the trial court's conclusion in this regard, contending that anytime a defendant "bares his soul" to someone and "spreads the blame" by implicating another, his statement is inherently suspect and should not be admitted. However, no decision binding this court so holds. In fact, as *Lilly* points out, *Lee* v. *Illinois* (1986) 476 U.S. 530, 543 [106 S.Ct. 2056, 2063, 90 L.Ed.2d 514], held that even the presumption of unreliability that attaches to a confession given by a codefendant *to law enforcement* may be rebutted. Additionally, this position wrongfully assumes that the declarant is attempting to spread the blame, when, in fact, the declarant could be merely telling the truth.

[6]During oral argument, appellate counsel for Duke conceded that the residual trustworthiness test is still alive and well after *Lilly*. What he suggested was that we take the step not taken in *Lilly* and eliminate it. This we cannot do.

U.S. 171 [107 S.Ct. 2775, 97 L.Ed.2d 144]; *Lee* v. *Illinois, supra,* 476 U.S. 530; *People* v. *Clark* (1992) 3 Cal.4th 41 [10 Cal.Rptr.2d 554, 833 P.2d 561]; *People* v. *Morales* (1989) 48 Cal.3d 527 [257 Cal.Rptr. 64, 770 P.2d 244].)[7]

Although *Lilly* makes clear that a declaration against interest is not a firmly rooted exception to the hearsay rule for purposes of avoiding confrontation problems when an accomplice's statements inculpate a defendant, the residual trustworthiness test is.

In examining the facts in *Lilly* to determine if the residual trustworthiness test had been met, the United States Supreme Court first noted that the declarant had made his statements while in custody for his involvement in and knowledge of the crimes, under the supervision of governmental authorities. Second, his statements were primarily in response to officers' leading questions, which, of course, were not accompanied by cross-examination. Regarding this, the Supreme Court concluded, "Thus, [the declarant] had a natural motive to attempt to exculpate himself as much as possible." (*Lilly* v. *Virginia, supra,* 527 U.S. at p. __ [119 S.Ct. at p. 1901].) Finally, the court noted that it was obvious that the declarant was under the influence of alcohol when he made his statements.

 Here, in contrast, Hann voluntarily and spontaneously made his statements to a friend within hours of committing the crimes. He initially asserted that he (and no one else) had beaten someone up for money. According to the People's moving papers below, Hann told his friend that " 'He tried getting money off [the victim] to get [his girlfriend] bailed out of jail, . . . the guy wouldn't cooperate . . . so he ended up driving his truck off a cliff.' " Hann explained that Duke's girlfriend set up the victim and he and Duke " 'did the rest.' " Although they got $40 from the victim, " '[the victim] couldn't get no more, so they went and dumped him.' " Hann said that he and Duke took a toolbox and pool cue from the victim. Hann showed

---

[7]We reject Duke's contention that the granting of review by the California Supreme Court in *People* v. *Duarte* (S068162, review granted Apr. 15, 1998), somehow calls into question its holding in *Morales.*

We also disagree with Duke that *People* v. *Fletcher* (1996) 13 Cal.4th 451 [53 Cal.Rptr.2d 572, 917 P.2d 187] and *Richardson* v. *Marsh* (1987) 481 U.S. 200 [107 S.Ct. 1702, 95 L.Ed.2d 176] prohibit the introduction of Hann's statements.

In *Fletcher*, the California Supreme Court noted that the holding of *Bruton* v. *United States* (1968) 391 U.S. 123 [88 S.Ct. 1620, 20 L.Ed.2d 476], modified by the holding of *Richardson* v. *Marsh, supra,* 481 U.S. 200, was that admission, at a joint trial, of a nontestifying codefendant's confession which is facially incriminating to the defendant violates the confrontation clause. *Fletcher* addressed only whether the method of redaction of the codefendant's confession used there was sufficient for purposes of the confrontation clause as interpreted by *Bruton. Bruton* involved in-custody statements to law enforcement. *Richardson* v. *Marsh* also involved an in-custody confession to police.

his friend marks on his arm he claimed came from his elbowing the victim in the face while they were driving the victim around trying to get him to take money out of the automated teller machine. He said that every time *he* thought about his girlfriend being in jail, *he* would hit the victim again. He also said that he was angry at Duke when the latter threw the victim's wallet out the window while they were driving, as Hann was planning to use the victim's identification to visit his girlfriend in the jail. Thus, he provided himself an additional motive to kill the victim. Hann related that because the victim could identify them, both he and Duke put the victim in the toolbox, put it in the back of the victim's truck and pushed it over the cliff. Hann admitted contemplating putting the victim in the toolbox for four hours and coming back to see if he was ready to go to the bank. He told his friend that *he* " 'gave the [victim] three chances, he didn't know why he gave him that many chances, but he asked him, was his life worth the money. And the [victim] sa[id, "N]o, no, no, no. I'll do it for you, I'll do it for you,["] ' " but every time they went to an automated teller machine, the victim got nothing from it.

We agree with the assertion made below by the prosecutor and inferentially adopted by the trial court that Hann had no apparent motive to lie, and he did not attempt to shift blame or deny his involvement in the crimes. He made the statements before he was even a suspect.

Thus, unlike *Lilly*, there is no sound basis to disagree with the trial court's conclusion that the residual trustworthiness test had been met.[8] Added to the mix here is the fact that the trial court instructed the jury that it could consider the fact that Duke was not able to cross-examine Hann about his

---

[8]Contrary to the contention of appellate counsel for Duke at oral argument, we see nothing in *Dutton* v. *Evans* (1970) 400 U.S. 74 [91 S.Ct. 210, 27 L.Ed.2d 213] that compels a contrary conclusion. In *Dutton*, the statement was admitted under a state hearsay exception. The Supreme Court began by pointing out that the confrontation clause does not prohibit the admission of all hearsay. (*Id.* at p. 80 [91 S.Ct. at p. 215].) The court distinguished the facts in *Dutton* from those involved in earlier decisions, saying that this did "not involve the use . . . of a confession made in the coercive atmosphere of official interrogation, as did *Douglas* [v. *Alabama* (1965) 380 U.S. 415 [85 S.Ct. 1074, 13 L.Ed.2d 934]], . . . *Bruton* [v. *United States* (1968) 391 U.S. 123 [88 S.Ct. 1620, 20 L.Ed.2d 476]] and *Roberts* [v. *Russell* (1968) 392 U.S. 293 [88 S.Ct. 1921, 20 L.Ed.2d 1100]]." (*Dutton* v. *Evans, supra,* 400 U.S. at p. 87 [91 S.Ct. at p. 219].) The court concluded that there was no violation of the confrontation clause because the statement itself and the circumstances under which it had been given and facts adduced at trial demonstrated that it was worthy of the jury's belief. (*Id.* at pp. 88-89 [91 S.Ct at pp. 219-220].) Concluding, the court said, "These are indicia of reliability which have been widely viewed as determinative of whether a statement may be placed before the jury though there is no confrontation of the declarant. [¶] . . . [T]he mission of the Confrontation Clause is to advance a practical concern for the accuracy of the truth-determining process . . . by assuring that 'the trier of fact [has] a satisfactory basis for evaluating the truth of the prior statement.' [Citation.]" (*Id.* at p. 89 [91 S.Ct. at p. 220].)

statements in assessing those statements, thus taking some of the sting out of the trial court's ruling for Duke.

2. *Jury Instructions*

 a.-c.*

. . . . . . . . . . . . . . . . . . . . . . . . .

3. *Duke's Sentencing*

 a., b.*

. . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

Hann's judgment is affirmed. As to Duke, the one-year term for the Penal Code section 667.5, subdivision (b), enhancement is stricken. The People have 30 days from the date of this opinion to decide whether to retry Duke on the allegation. If they opt not to, the trial court is directed to amend the abstract of judgment to omit any reference to a finding regarding this allegation and any term imposed for it. Whatever occurs in this regard, the trial court is directed to amend the abstract to show that Duke earned 754 days of credit for his 1,508 days of presentence custody time, for a total of 2,262 days. In all other respects, Duke's judgment is affirmed.

Hollenhorst, J., and Ward, J., concurred.

The petitions of all appellants for review by the Supreme Court were denied November 17, 1999.

---

*See footnote, *ante*, page 23.