NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 16a0099n.06

No. 14-3070

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Feb 16, 2016
DEBORAH S. HUNT, Clerk

REGINALD CLEMENT,                )
                                 )
    Petitioner-Appellant,        )
                                 )
v.                               )
                                 )   ON APPEAL FROM THE UNITED
                                 )   STATES DISTRICT COURT FOR THE
BENNIE KELLY, Warden,            )   NORTHERN DISTRICT OF OHIO
                                 )
    Respondent-Appellee.         )
                                 )
                                 )

BEFORE:    DAUGHTREY, COOK, and WHITE, Circuit Judges.

MARTHA CRAIG DAUGHTREY, Circuit Judge. Petitioner Reginald Clement is an Ohio state prisoner seeking federal habeas corpus relief based on the allegedly improper admission of an involuntary statement he made while in the hospital and an alleged Confrontation Clause violation, both of which occurred during his trial for the murder of Gregory Williams. A jury convicted Clement of aggravated murder, aggravated robbery, kidnapping, and having a weapon while under disability, and the trial judge imposed a life sentence. The district court dismissed Clement's habeas petition, concluding that relevant rulings by the Ohio state courts were neither contrary to nor unreasonable applications of established federal law. We agree and affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

The events leading to Gregory Williams's death began with a phone call to Williams, asking him to bring marijuana to the home of brothers Dominic and Alfred Rodgers to sell to

them and their cousin, Demetrius Williams, who was also present at the house. In point of fact, the trio planned to rob Gregory Williams, and they invited Lavonte Green and petitioner Reginald Clement to join them in the robbery. Both Green and Clement had guns.

In the meantime, Gregory asked his friend Tramel Wallace to drive him to the Rodgerses' house. When Wallace and Gregory pulled into the driveway, Green jumped into the back seat of the car and pointed a gun at Gregory, who then climbed over the seat into the back of the car and began to wrestle with Green for the gun. As they wrestled, the gun discharged, but no one was hurt. Wallace quickly backed the vehicle out of the driveway, but when he stopped backing up in order to drive forward, Clement stuck his arm in the passenger-side window and shot Gregory in the chest as he struggled with Green. As Wallace drove away, Green jumped out of the car. Wallace drove to a nearby police station to get help for Gregory, who later died from his wound. Several days later, police questioned Clement in a local hospital, where he was being treated for a gunshot wound to his leg, and took a statement from Clement, who denied shooting Gregory.

An Ohio jury found Clement guilty of aggravated murder, aggravated robbery, kidnapping, and having a weapon while under disability. He was sentenced to life imprisonment with parole eligibility after 36 years.

On direct appeal, Clement argued that the trial court erred (1) in admitting the written statement he provided police while he was in the hospital in significant pain and on pain killers, because it was involuntary under those circumstances and (2) in allowing the state to offer Alfred Rodgers's prior testimony from Green's trial, including his statement implicating Clement as the shooter, as substantive evidence of guilt. The Ohio Court of Appeals overruled both assignments of error. The court first found no evidence to support the assertion that Clement's statement was involuntary or made without full awareness of the consequences and a valid waiver of his rights.

The court further ruled that Alfred Rodgers's prior testimony was not hearsay and could be admitted as substantive evidence of guilt at trial because it had been made at Green's trial six weeks earlier under penalty of perjury and subject to cross-examination. The Ohio Court of Appeals thus affirmed Clement's conviction, and the Ohio Supreme Court denied further review. *See State v. Clement*, No. 94869, 2011 WL 1168133 (Ohio Ct. App. Mar. 31, 2011); *State v. Clement*, 949 N.E.2d 1005 (Table) (Ohio 2011).

After Clement's efforts to obtain relief through collateral state proceedings proved unsuccessful, he filed a petition for a writ of habeas corpus in federal district court, in which he raised 12 grounds for relief. Only two are at issue in this appeal: (1) "Petitioner was denied his constitutional rights under the Fifth and Sixth Amendment[s] where any statement that he gave to the police was involuntary and violated his constitutional rights," and (2) "Petitioner was denied his right of confrontation and cross-examination when the trial court allowed a statement from a witness to be used as substantive evidence rather than limiting the use of that evidence to impeachment only."

The matter was referred to a magistrate judge, who concluded that Clement procedurally defaulted his Sixth Amendment claim regarding his hospital statement, a default that was not excused by proof of actual innocence; that the state court reasonably determined that Clement's hospital statement was voluntary under the Fifth Amendment; and that the state court's admission of Alfred Rodgers's prior testimony was not contrary to or an unreasonable application of clearly established federal law. The district court adopted that recommendation, denied the petition, and issued a certificate of appealability limited to Clement's Confrontation Clause claim. We then expanded the certificate of appealability to add his claim that his hospital statement was obtained in violation of his Fifth Amendment rights.

***DISCUSSION***

In a habeas proceeding, we review the district court's legal conclusions *de novo* and its findings of fact for clear error. *Davis v. Lafler*, 658 F.3d 525, 530 (6th Cir. 2011) (*en banc*). Under the Antiterrorism and Effective Death Penalty Act (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (1996), an application for a writ of habeas corpus may not be granted unless the state court adjudication on the merits of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts." 28 U.S.C. § 2254(d). Section 2254(d)'s "highly deferential standard . . . demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (internal quotation marks and citations omitted).

A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A state court unreasonably applies clearly established law if it identifies the correct legal principle but unreasonably applies it to the facts of the case. *Id.* "For purposes of § 2254(d)(1), an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (internal quotation marks and citation omitted).

**Involuntary Statement Claim**

Three days after Gregory Williams was murdered, Clement was questioned by Detective Volek at a hospital, where Clement was being treated for a gunshot wound to his leg. Clement

was under arrest at the time of questioning, and a deputy was stationed outside his room. When he arrived at the hospital that day, Volek checked with the nurses and learned that Clement was "okay for conversation." Medical records indicate that 30 minutes before Volek's visit, Clement's self-reported pain level was eight on a scale of ten and that he had been given two Percocet tablets. Nevertheless, Clement appeared alert, coherent, and engaged, and he was talking with family when Volek entered his room. He was sitting up in bed, and he did not grimace or groan during the interview. However, when asked whether he was hurting, Clement said, "Yes."

Volek asked Clement's family to leave the room, and they complied. He then read Clement a form explaining his constitutional rights, and Clement answered that he understood each of them. Clement also stated that he did not have any questions about the explanation of rights, and he read and signed a waiver form. After orally answering Volek's questions, Clement indicated that he would like to make a written statement. Volek gave him a printed statement form, which again explained his constitutional rights. Clement initialed the form to indicate that he understood his rights, that he wished to make a statement, and that he was not presently under the influence of alcohol, drugs, or narcotics. Clement then provided the following "very well-written" statement in "very neat" penmanship:

> I was riding in the car with Lavonte [Green]. Demetrius Williams called me up to his friend's house on South Green. When I got there, Demetrius and another guy was waiting on somebody to bring some kind of weed. Lavonte said he was going to rob the guy and I said, I'm leaving.

> I went across the street and got in my car and pulled off. Shortly after, Lavonte called and asked me to pick him up off Emerson Street. So I picked him up and he was upset but didn't say much. So I was dropping him off, then when I was dropping him off, he said I left him for dead. I didn't know what that meant and he just shot me in my right leg and I pulled off.

Volek's entire interaction with Clement at the hospital lasted approximately 30 minutes.

The state trial court denied the motion to suppress Clement's statement, noting that he had initialed all of the questions regarding his rights and had given a detailed statement in his own handwriting. The Ohio Court of Appeals affirmed the trial court's decision to admit the statement, applying the standards set forth in *Miranda v. Arizona*, 384 U.S. 436, 444 (1966) (listing the particular warnings that must be given during a custodial interrogation before an individual can waive his constitutional rights knowingly and intelligently), and *Moran v. Burbine*, 475 U.S. 412, 421 (1986) (holding that a waiver of *Miranda* rights must be "the product of a free and deliberate choice rather than intimidation, coercion, or deception," and be "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it"). The Ohio Court of Appeals found no evidence of coercive activity and concluded that there was no evidence to support a finding that Clement's statement was involuntary or made without full awareness of the consequences.

Reviewing Clement's habeas petition, the magistrate judge determined that Clement had failed to identify any Supreme Court case law holding that the circumstances of his case required a finding that his statement was *per se* involuntary and ruled that "the state court made a reasonable determination of the facts and reasonably applied the constitutional standard in determining that Clement's waiver of his rights was voluntary." *Clement v. Kelly*, 2013 WL 6048743, at *14 (N.D. Ohio Nov. 14, 2013). The district court subsequently noted that Clement "ma[de] a good argument for why he could not voluntarily waive his rights under the circumstances," but concluded that the Ohio court had not unreasonably applied Supreme Court precedent in finding to the contrary. *Clement v. Kelly*, 2013 WL 6837303 (N.D. Ohio Dec. 26, 2013).

In focusing on the validity of Clement's waiver of his *Miranda* rights, the district court, like the state courts, appears to have conflated the analysis of two distinct concepts of voluntariness. The fundamental constitutional guarantee, and the one invoked by Clement in his habeas petition, is the right to be free from coercion when giving a statement to law enforcement officers. *See Mallory v. Hogan*, 378 U.S. 1, 7 (1964) ("[T]he admissibility of a confession in a state criminal prosecution . . . is controlled by that portion of the Fifth Amendment to the constitution of the United States commanding that no person 'shall be compelled in any criminal case to be a witness against himself.'") (internal citations omitted). Thus, as the *Mallory* court held, "the constitutional inquiry is . . . whether the confession was free and voluntary; that is, (it) must not be extracted by any sort of threats or violence, nor obtained by any direct or implied promises, however slight, nor by the exertion of any improper influence." *Id.* (internal quotation marks and citations omitted). It was apparently this guarantee that Clement intended to invoke when he claimed in his habeas petition, as he had in state court, that "any statement that he gave to the police was involuntary and violated his constitutional rights."

Two years after the Supreme Court decided *Mallory*, the Court crafted a prophylactic rule in *Miranda* intended to implement the protection against self-incrimination. *Miranda*, 384 U.S. at 444 (holding that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination"). The Court also held that the *Miranda* safeguards, including certain warnings about the use of any resulting statement and the right to have an attorney present during questioning, can be waived, but that the waiver must be made "knowingly and intelligently," *id.* at 475, and the

"relinquishment of the privilege" must be "voluntary." *Id.* at 476. *See also Moran*, 475 U.S. at 421 (holding that a *Miranda* waiver must entail a "free and deliberate choice").

From this discussion, it is clear that two concepts of voluntariness are involved when the admissibility of a confession is challenged: (1) the voluntary nature of the statement itself that insures against coercion and (2) the voluntary nature of a *Miranda* waiver. Although Clement did not raise a *Miranda* challenge in state or federal court, the voluntariness of his waiver before giving a statement to police is relevant, because the Supreme Court has observed that a voluntary *Miranda* waiver will generally defeat a claim that a subsequent statement was involuntary. *See, e.g., Missouri v. Seibert*, 542 U.S. 600, 608-09 (2004) (plurality opinion) ("[G]iving the warnings and getting a waiver has generally produced a virtual ticket of admissibility . . . and litigation of voluntariness tends to end with the finding of a valid waiver.").

To the extent Clement suggests that his statement was involuntary regardless of any *Miranda* waiver, this argument lacks merit. Clement cites several of the Supreme Court's voluntariness cases—*Mincey v. Arizona*, 437 U.S. 385 (1978); *Jackson v. Denno*, 378 U.S. 368 (1964); *Townsend v. Sain*, 372 U.S. 293 (1963); and *Culombe v. Connecticut*, 367 U.S. 568 (1961)—but does not explain how the Ohio Court of Appeals decision is contrary to or an unreasonable application of those cases. In *Culombe*, for example, the Court held a statement involuntary primarily because of a prolonged, four-day interrogation. *Culombe*, 367 U.S. at 628-35. Here, by contrast, the police officer spoke with Clement for only half an hour. The issue in *Townsend* was whether a statement can be voluntary after a defendant is given "a drug having the effect of a 'truth serum.'" *Townsend*, 372 U.S. at 307-08. That issue is not relevant in Clement's case. And, in *Jackson*, the Court considered only whether a defendant was entitled to a hearing on the voluntariness of a confession. *Jackson*, 378 U.S. at 391-96.

*Mincey* presents an even clearer contrast to the case at hand. There, the defendant sustained serious injuries during an exchange of gunfire with law enforcement and arrived at the hospital virtually comatose. *Mincey*, 437 U.S. at 398. Only hours after he was shot, police began questioning him while he was in an intensive care unit and able to respond only in writing because a tube in his throat prevented him from speaking. *Id.* at 396, 398-99. Mincey was "evidently confused and unable to think clearly" and complained of "unbearable" pain. *Id.* at 398. He had received *Miranda* warnings but "asked repeatedly that the interrogation stop until he could get a lawyer." *Id.* at 396. By contrast, Clement had been injured several days earlier, appeared alert and responsive, and never signaled any resistance to interrogation. Clement chose to waive his *Miranda* rights and affirmatively agreed to supply a statement in his own handwriting. Because of these significant differences, *Mincey* cannot provided Clement with a basis for relief under the deferential standard of AEDPA.

Nor can Clement rely on *Mincey* to support his argument that the Ohio Court of Appeals erred by failing to conduct an independent evaluation of the record and to consider the totality of the evidence in concluding that his statements to the police were voluntary. In *Mincey*, the Supreme Court noted its "duty to make an independent evaluation of the record" to explain why it was not bound on direct review by a state-court determination that a confession was voluntary. Here, the Ohio court cited relevant Supreme Court opinions addressing *Miranda* waivers and reasonably applied the law to the facts of this case. Moreover, we reject Clement's assertion that the state court failed to conduct an independent evaluation of the record, because the record before us confirms that the appellate court actually undertook an independent review of the trial court record. Its analysis set out the facts that supported its conclusion and was significantly more detailed than the trial court's ruling on the motion to suppress. Such an explicit statement

of the facts could only have come from an independent review of the record. Thus, the Ohio Court of Appeals did not rely unreasonably on the trial court's findings.

Clement's argument that the magistrate judge improperly deferred to the Ohio court's rulings also lacks merit. The judge's habeas review conformed to the highly deferential standard required by § 2254(d)(1) and the Supreme Court cases interpreting that section. We are bound by the same standard and, like the magistrate judge and the district court in adopting the magistrate judge's report, we cannot say that the Ohio court's application of the law to the facts of this case was unreasonable. As the magistrate judge noted, there is no Supreme Court precedent requiring a finding that Clement's statement was *per se* involuntary under the circumstances. Moreover, although the district judge observed that Clement "ma[de] a good argument" that his statement could be deemed involuntary given his medical condition at the time, federal habeas relief is precluded as long as "fairminded jurists could disagree on the correctness of the state court's decision." *Harrington*, 562 U.S. at 101 (internal quotation marks and citation omitted).

In sum, the determination by the Ohio Court of Appeals that Clement's statement was voluntary and knowing was neither contrary to nor an unreasonable application of federal law.

**Confrontation Clause Claim**

The state called Alfred Rodgers as a witness in both Green's and Clement's trials. Alfred Rodgers had entered a plea agreement in which he promised to testify truthfully for the prosecution in exchange for an 18-year sentence for his role in the offense. He testified during Green's trial that he saw Clement follow Wallace's car down the driveway and point a gun in the window. However, at Clement's trial six weeks later, Rodgers claimed that he could not remember this or many of the other events about which he had testified previously. The state

then received permission to treat Alfred Rodgers as a hostile witness and to read portions of his testimony from Green's trial into the record.

Clement's attorney cross-examined Alfred Rodgers at length. Defense counsel elicited a statement from him that because he had made a plea deal with the prosecution, his testimony at Green's trial was what he thought the prosecutor wanted to hear. Counsel then pursued a line of questioning that sought to implicate Dominic Rodgers as the shooter and to imply that Alfred Rodgers had previously identified Clement as the shooter simply to protect Dominic, his younger brother. The Ohio Court of Appeals held that Alfred Rodgers's prior testimony was not hearsay and could be admitted as substantive evidence of guilt because it was given under oath and was subject to cross-examination by the party against whom it was offered.

The Sixth Amendment affords criminal defendants the right to confront the witnesses against them. U.S. Const. amend. VI. Under the Confrontation Clause, a testimonial statement of a witness who does not testify at trial cannot be admitted unless the witness is unavailable and the defendant has had a prior opportunity to examine the witness. *Crawford v. Washington*, 541 U.S. 36, 59 (2004). However, "when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements." *Id.* at 59 n.9 (citing *California v. Green*, 399 U.S. 149, 162 (1970)). "The [Confrontation] Clause does not bar admission of a statement so long as the declarant is present at trial to defend or explain it." *Id.*

We conclude that the admission of Alfred Rodgers's prior sworn testimony did not present a Confrontation Clause problem under clearly established Supreme Court precedent because he was present at Clement's trial and was cross-examined by Clement's attorney during trial. Clement argues that *Douglas v. Alabama*, 380 U.S. 415 (1965), a case in which the

declarant was present at trial but invoked his privilege against self-incrimination and refused to answer questions on direct- or cross-examination, governs this case. Unlike the declarant in *Douglas*, however, Alfred Rodgers did not claim the privilege against self-incrimination or refuse to answer questions on cross-examination.

We also reject Clement's argument that Alfred Rodgers's professed lack of memory made him effectively unavailable for cross-examination. The record shows that he responded to defense counsel's questions and claimed not to remember only whether he pleaded guilty to a gun specification and whether he pleaded guilty to aggravated robbery. But Rodgers readily answered defense counsel's questions about the events surrounding Gregory Williams's death. Thus, he was not effectively unavailable for cross-examination; indeed, he was cross-examined thoroughly by Clement's attorney at Clement's trial. We conclude that the Ohio court's determination that Alfred Rodgers's prior testimony was admissible was neither contrary to nor an unreasonable application of federal law.

## CONCLUSION

Because we cannot say that the Ohio court's determinations that Clement's statement was voluntary and that Rodgers's prior testimony was admissible were contrary to or unreasonable applications of federal law, it follows that the district court correctly denied habeas relief in this case. We therefore AFFIRM the judgment of the district court.