**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0243**

State of Minnesota,
Respondent,

vs.

Daniel Irlas,
Appellant.

**Filed December 27, 2016
Reversed and remanded
Reyes, Judge**

Mower County District Court
File No. 50-CR-15-3

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Kristen Nelsen, Mower County Attorney, Megan A. Burroughs, Assistant County Attorney, Austin, Minnesota (for respondent)

Charles F. Clippert, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Reyes, Presiding Judge; T. Smith, Judge; and J. Smith, Judge.[*]

## S Y L L A B U S

A state witness who is present at trial but who invokes the Fifth Amendment privilege, whether validly or not, is unavailable and cannot be considered subject to cross-examination for confrontation clause purposes, thereby precluding admission of the witness's out-of-court testimonial statement.

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**O P I N I O N**

**REYES**, Judge

Appellant Daniel Irlas argues that the admission of his co-defendant Ernesto Salinas's guilty-plea transcript at appellant's criminal trial violated his right under the Confrontation Clause because Salinas was unavailable, and appellant was not afforded the opportunity to cross-examine him. Because we conclude that (1) Salinas was unavailable at trial, (2) the admission of his guilty-plea transcript violated appellant's right under the Confrontation Clause to confront witnesses against him, and (3) the admission constitutes reversible error, we reverse and remand.

**FACTS**

In the early morning hours of December 26, 2014, appellant and appellant's cousins, Salinas and W.B., drove to P.P.'s apartment. Prior to this, P.P. and Salinas were involved in an altercation in which P.P. struck Salinas with a pipe wrench. During this time, P.P. was smoking methamphetamine with a number of other individuals inside his apartment when W.B. knocked on the door to P.P.'s apartment. P.P. answered the door, and W.B. asked for someone unknown to P.P. P.P. asked the other individuals in the apartment if they knew the person, but no one did. P.P. went back to tell W.B. this, when he saw appellant and Salinas running towards him. P.P. had a pipe wrench by the door, and as they approached, he picked it up and swung the wrench in their direction. All three individuals then entered the house at which point appellant wrestled the wrench out of P.P.'s hands and repeatedly punched P.P. in the face. While appellant and P.P were fighting on the ground, W.B. hit P.P. in the stomach twice. During this altercation,

2

Salinas ran to P.P.'s bedroom and removed some of his personal belongings. Salinas then came back out, grabbed the wrench, and hit P.P. approximately three times in the head with it. Afterward, all three individuals ran out of the apartment.

P.P. suffered injuries to his diaphragm, a stab wound to his stomach, and a stab wound near his heart. During the fight, P.P. did not realize he had been stabbed and did not know who stabbed him; however, P.P. testified that the altercation was mainly between him and appellant.

Appellant, Salinas, and W.B. were eventually arrested, and each was separately charged. Appellant was charged with the following: (1) second-degree attempted murder in violation of Minn. Stat. § 609.19, subd. 2(1) (2014); (2) first-degree burglary in violation of Minn. Stat. § 609.582, subd. 1(b) (2014); (3) first-degree burglary in violation of Minn. Stat. § 609.582, subd. 1(c); (4) second-degree assault in violation of Minn. Stat. § 609.222, subd. 2 (2014); and (5) fifth-degree assault in violation of Minn. Stat. § 609.224, subd. 4(b) (2014).

Prior to trial, Salinas entered a guilty plea to first-degree burglary and second-degree assault with the understanding that he would testify at appellant's trial. Testimony by Salinas during his guilty plea implicated appellant and W.B. as participating in the assault. Specifically, Salinas admitted that he went to P.P.'s house with appellant and W.B. in retaliation for P.P. striking Salinas with a wrench earlier that night. Salinas testified that he had stabbed P.P. with a knife and that appellant took part in assaulting P.P.

3

At appellant's and W.B.'s joint trial, the state proceeded under a theory that Salinas had stabbed P.P., but appellant and W.B. each participated in the attack, and aided and abetted Salinas in stabbing P.P. Salinas took the stand and answered some preliminary questions, including the fact that he had pleaded guilty and admitted involvement in the attack. However, when the state asked him more specific questions about the incident, Salinas refused to answer, improperly asserting a claimed Fifth Amendment privilege, stating:

> THE STATE: So what was the -- what happened between you and [P.P.]?
> SALINAS: I have been advised to plead the Fifth.
> . . .
> THE STATE: And in order to enter a plea of guilty, you have to tell the Court what happened under oath; is that correct?
> SALINAS: Yes, but I have been advised to plead the Fifth.
> THE STATE: So are you refusing to answer any questions here today?
> SALINAS: I have been advised to plead the Fifth.
> THE STATE: So is that a "yes"?
> SALINAS: Well, then, yeah.
> THE STATE: Well, the Fifth Amendment is pertaining to you. So what do you know about [appellant], what's his involvement in this?
> SALINAS: I have been advised to plead the Fifth.
> THE STATE: So you are not going to answer any questions with respect to either Defendant?
> SALINAS: No, sir. I have been advised to plead the Fifth.

Attorneys for appellant and W.B. did not ask Salinas any questions on cross-examination. During a bench conference outside the presence of the jury, the district court stated that, by taking the stand, Salinas made himself available for cross-examination and that appellant and W.B. had waived their opportunity to cross-examine him. The district court admitted the plea transcript as: (1) a statement against penal

4

interest by an unavailable witness pursuant to Minn. R. Evid. 804 (a)(2) and 804(b)(3); (2) a prior inconsistent statement under Minn. R. Evid. 801(d)(1)(A); and (3) under the residual hearsay exception pursuant to Minn. R. Evid. 807. Salinas's plea transcript in which he described appellant's involvement in the assault was read to the jury by the state. Appellant and W.B. did not testify at trial.

The jury returned a guilty verdict against appellant but acquitted W.B. The jury found appellant guilty of burglary in the first-degree, aiding and abetting assault in the second-degree, and assault in the fifth-degree. Appellant was sentenced to a 120 months. Appellant filed a motion for a new trial based on the district court's admission of Salinas's plea transcript, which the district court denied. This appeal follows.

## ISSUES

I.      Is a state witness, who refuses to testify by invoking the Fifth Amendment, whether validly or not, unavailable for cross-examination, thereby violating the defendant's constitutional right to confrontation when the witness's out-of-court statement is admitted?

II.      Is the admission of the witness's out-of-court statement, and its subsequent use against a defendant to establish wrongdoing, harmless beyond a reasonable doubt?

## ANALYSIS

**I.      Appellant's right to confrontation was violated by the admission of a witness's out-of-court statement after the witness invoked his Fifth Amendment privilege.**

Appellant asserts that the state's introduction at trial and reading to the jury of Salinas's guilty-plea testimony violated his constitutional right to confrontation because

5

Salinas had invoked his Fifth Amendment privilege and was not available for cross-examination. We agree.

Under the Confrontation Clause of the Sixth Amendment to the United States Constitution, a defendant in a criminal case has the right "to be confronted with the witnesses against him." U.S. Const. amend. VI; *see also* Minn. Const. art. I, § 6. Appellate courts consider whether the district court's admission of evidence violated the defendant's Confrontation Clause rights de novo. *State v. Caulfield*, 722 N.W.2d 304, 308 (Minn. 2006). The Confrontation Clause bars the admission of a witness's out-of-court testimonial statement when the witness does not appear at trial unless the witness (1) is unavailable and (2) was previously subject to cross examination by the defendant. *Crawford v. Washington*, 541 U.S. 36, 59, 124 S. Ct. 1354, 1369 (2004). Stated differently, "the Confrontation Clause guarantees that testimonial statements made by a witness unavailable to testify at trial are inadmissible unless the defendant had an opportunity to cross-examine the witness." *State v. Swaney*, 787 N.W.2d 541, 552 (Minn. 2010) (citation omitted).

Minnesota courts have concluded that a witness is unavailable, for purposes of the Confrontation Clause, when the witness refuses to testify by invoking the Fifth Amendment's protection. *See, e.g.*, *State v. Ford*, 539 N.W.2d 214, 227 (Minn. 1995) (declaring witness unavailability may be established by a witness invoking Fifth Amendment protection against self-incrimination); *State v. Durante*, 406 N.W.2d 80, 84 (Minn. App. 1987) ("Witnesses who invoke their Fifth Amendment privilege are unavailable for purposes of the confrontation clause."); *State v. Iverson*, 396 N.W.2d 599,

6

606 (Minn. App. 1986) (declaring witness unavailable because witness refused to testify), *review denied* (Minn. Jan. 16, 1987); *see also Douglas v. Alabama*, 380 U.S. 415, 419-20, 85 S. Ct. 1074, 1077 (1965) (holding that confrontation rights were violated when witness asserted his Fifth Amendment privilege and prosecutor, under the guise of cross-examination, read to jury witness's confession implicating defendant). However, Minnesota courts have not yet addressed the issue of whether the invocation of an invalid Fifth Amendment privilege, where the assertion of such privilege is not knowingly improper by the state's witness, makes the witness unavailable for cross-examination.

Here, Salinas was not "available" because he invoked his Fifth Amendment privilege. Importantly, the supreme court has recognized, in dicta, that there is a high potential for prejudice to a defendant when witnesses invoke their Fifth Amendment privilege on the stand, regardless of whether the invocation was valid or not. *State v. Morales*, 788 N.W.2d 737, 752 (Minn. 2010) ("Courts in other jurisdictions agree that a defendant is unfairly prejudiced when a witness refuses to answer [by invoking the Fifth Amendment privilege], regardless of whether the witness was protected by a valid privilege."). Because Salinas was unavailable, the admission of his prior plea transcript violated appellant's rights under the Confrontation Clause and deprived him of the opportunity to cross-examine Salinas.

The state argues that, because Salinas did not have a valid Fifth Amendment privilege, his refusal to testify was not justified, and is better characterized as an uncooperative witnesss who feigns memory loss or is too afraid to testify. *See State v. Plantin*, 682 N.W.2d 653, 660 (Minn. App. 2004) (defendant's right to confront a witness

7

was not violated where defendant had ample opportunity to cross-examine a witness who testified, but claimed memory loss), *review denied* (Minn. Sept. 29, 2004). The state also argues that, because Salinas was available, despite his refusal to cooperate or testify, appellant should have taken steps to compel his testimony, citing to a non-binding case. *See Fowler v. State*, 829 N.E.2d 459, 467 (Ind. 2005) ("[A] request for an order directing the witness to respond is necessary to preserve a Confrontation Clause objection to prior statements by a witness.").

The state's arguments are unavailing for several reasons. First, in the cases relied on by the state, although the witnesses claimed or feigned memory loss, they willingly responded to questions on the stand. For example, in *Plantin*, the witnesses actually testified by providing evidence to establish or prove a fact. Salinas did not do so. Second, Salinas did not testify or respond willingly to questions about any of the underlying facts contained in the plea transcript, after invalidly invoking a purported Fifth Amendment privilege. In contrast, the defendant in *Plantin* had ample opportunity to cross-examine the testifying witness. *See Plantin*, 682 N.W.2d at 659. Finally, appellant's attorney could not request an order directing Salinas to testify or be held in contempt. *See* Minn. Stat. § 609.09 (2014) (upon a motion by the prosecution, a witness may be compelled to testify even as to incriminating matters, if so ordered by the presiding judge.)

Moreover, Salinas could not have been considered subject to cross-examination when he refused to answer questions and invoked his Fifth Amendment privilege. "Ordinarily, a witness is regarded as 'subject to cross-examination' when he is placed on

8

the stand, under oath, and responds willingly to questions." *United States v. Owens*, 484 U.S. 554, 561, 108 S. Ct. 838, 844 (1988). Here, although Salinas took the stand and answered some preliminary questions, he then refused to testify and refused to respond willingly to questions about the underlying facts of his guilty plea by invoking his Fifth Amendment privilege. *See id*. By doing so, Salinas did not testify and was not willing to respond to questions making him not subject to cross-examination under *Crawford*.

Therefore, we hold that when a state witness who is present at trial invokes the Fifth Amendment privilege, whether valid or not, that witness is unavailable and not subject to cross-examination for Confrontation Clause purposes, precluding the admission of that witness's out-of-court testimonial statement.

## II. The erroneous admission of the out-of-court statement, and its subsequent use, was not harmless beyond a reasonable doubt.

We review violations of the Confrontation Clause to determine whether the violation was harmless beyond a reasonable doubt. *State v. Courtney*, 696 N.W.2d 73, 79 (Minn. 2005). A Confrontation Clause error is harmless if "the guilty verdict actually rendered [is] surely unattributable to the error." *Id*. at 80 (quotation omitted). We consider the manner in which the evidence was presented, whether it was used in closing arguments, whether it was highly persuasive, whether it was effectively countered, and the strength of the evidence. *Id.* at 80 (citation omitted).

The state used the plea transcript as substantive evidence and read the transcript verbatim into the record. Salinas's plea transcript implicated appellant in the assault of P.P.; however, Salinas did admit to being the individual who stabbed P.P. and hit P.P.

with a pipe wrench. The plea transcript was heavily referenced in closing arguments, allowing the state to form a narrative of its theory of the case, including arguments to establish the relationship between appellant, and to corroborate much of P.P.'s direct testimony. Without the plea transcript, the jury would have had to rely primarily on P.P.'s testimony, as P.P. was the state's only witness who could testify about the attack. Thus, the plea transcript was highly persuasive, because P.P.'s credibility was at issue and because he admitted to being on methamphetamine before and during the assault. Furthermore, appellant did not present any defense witnesses to contradict any of the testimony presented through Salinas's plea transcript. As a result, without corroboration from the plea transcript, the state's case against appellant would have been substantially weaker and dependent on the testimony of P.P., who was under the influence of drugs. Accordingly, after careful consideration of the factors, we cannot conclude beyond a reasonable doubt that the transcript's use at trial was harmless.

## DECISION

Salinas's invocation of his Fifth Amendment privilege, even if invalid, meant that he was unavailable to testify. Furthermore, after invoking his purported Fifth Amendment privilege, Salinas did not willingly respond to questions and could not be cross examined. As a result, the introduction of Salinas's plea transcript at appellant's trial, when Salinas was unavailable, without any opportunity for appellant to cross-examine Salinas regarding the plea transcript, violated appellant's rights under the Confrontation Clause. Because the error was not harmless beyond a reasonable doubt, we reverse appellant's conviction and remand for a new trial. Based on our conclusion

10

that the violation of the confrontation clause was reversible error, we need not address appellant's other contentions on appeal,[1] or determine whether the plea transcript would be admissible under any hearsay exception.

**Reversed and remanded.**

---

[1] Appellant challenges the search and seizure of the SUV involved, the jury's credibility determinations of P.P., and the credibility of the D.N.A. evidence. Appellant also argues that he should not have received an aggravated sentence of 120 months.